VINCENT & Co. v. BERRY.

1. **Vendor and Vendee:** FAILURE OF CONSIDERATION. A party will not be relieved from the consequences of a partial failure of consideration in the purchase of property where he had opportunity to ascertain for himself the value of the consideration, and was urged by the vendor to do so before the contract was made. He must rely at his peril upon the opinion of the vendor, in the absence of fraud on the part of the latter, and cannot be indemnified if he has neglected the ordinary and accessible means of information.

2. ———: MORTGAGE: DEFECTIVE TITLE. Equity will not relieve a person who purchases a mortgage upon real estate to which the title is defective, unless the seller has made some statement respecting the title upon which the purchaser was justified in relying.

*Appeal from Webster Circuit Court.*

THURSDAY, OCTOBER 4.

THE plaintiffs, residing and doing business as merchants at Fort Dodge, in this State, sold to the defendant their stock of goods and received therefor three promissory notes, executed by one Andrews and secured by a mortgage upon a house and lot in Allegan county, Michigan, and upon eighty acres of land in Grand Traverse county, Michigan. They also received for said stock a certain contract whereby one W. L. Heazlet and one Frank Henika purchased of the defendant a certain store building and lot in Allegan county, Michigan, and agreed to pay therefor the sum of $4,000, and the plaintiffs received as security for the performance of said contract the legal title to the property purchased in the contract. The plaintiffs were to pay the defendant one hundred and twenty-one dollars from the first money collected on the contract. The securities turned

out to be worth less than it was supposed they were, and this action is brought to cancel the trade on the ground that it was induced by fraudulent representations made by the defendant in regard to the value of the securites. Other facts are stated in the opinion. Decree for plaintiffs. Defendant appeals.

*John F. Duncombe*, for appellant.

*A. N. Botsford* and *O'Connell & Springer*, for appellees.

ADAMS, J.—The defendant a short time before this trade was made had been engaged in mercantile business in Michigan,

1. VENDOR and vendee: failure of consideration. and had sold out there and removed to Fort Dodge, in this State. The plaintiffs, being desirous of selling out their stock of goods and withdrawing from the business, conceived the idea of selling to the defendant. They applied to him to know if he had not securities (the defendant says some Michigan securities) which he would exchange for their stock. Some conversation was had upon the subject, and in the course of it the defendant took from his safe and exhibited to the plaintiffs the securities in question. The plaintiffs were ignorant of their value. Heazlett & Henika and Andrews all resided in Michigan, and were unknown to the plaintiffs. The defendant testifies that he declined to trade unless the plaintiffs or one of them would go to Michigan and investigate the securities for themselves. The plaintiffs in their testimony deny that the defendant declined to trade unless they or one of them would go to Michigan and investigate the securities for themselves, but they admit that he said he preferred that they should do it. As the plaintiffs were anxious to trade, and the defendant preferred that before trading they should personally investigate the securities, one of the plaintiffs, Webb Vincent, went to Michigan, and to the place where Heazlet & Henika resided and were doing business, and also to the place where Andrews resided and was doing business. He saw Heazlet & Henika, but did not see Andrews, as he was sick. He saw all the property in question except the eighty acres in Grand Traverse county. He had, so far as the record shows, every reasonable facility to accomplish the object

of his mission. He could have seen the land in Grand Traverse county by traveling one hundred and fifty miles, and no reason is given why he did not see it except that he did not have a description of the land, but that could have been obtained from the record, as the mortgage was on record. After he returned the trade was consummated. The securities were put in at their face. The goods for the most part were put in at eastern prices with five per cent added. They were worth in cash about twenty per cent less, so the defendant realized about eighty cents on a dollar for his securities. A few months after the trade was made Heazlet & Henika failed, and it is made to appear that the real estate is not sufficient security. The title to the eighty acres has also proved to be bad and Andrews not responsible. The plaintiffs claim that notwithstanding their investigation they relied upon representations made by defendant, and that those representations were not true. It is insisted in the first place that they were made in bad faith, and in the second place that if they were not they were made under a mistake, and that in such case the plaintiffs are entitled to relief.

We have examined the evidence carefully, and it fails to satisfy us that the defendant made any representation in bad faith. The case discloses the somewhat unusual feature, that the seller of property insisted that the purchaser should make a journey of several hundred miles, to ascertain by personal investigation the value of the property. This would go far to preclude the idea of a fraudulent design on the part of the defendant. But, aside from that, it does not appear to us that the evidence is sufficient to show bad faith. The evidence does indeed show that the defendant stated that Heazlet & Henika were worth about six thousand dollars, and it seems probable that they were worth considerably less than that. But according to the testimony of several witnesses who show themselves entitled to credit, that firm was regarded in the community in which they lived at the time the trade was made as worth six thousand dollars or more. At most we think that the defendant was merely mistaken. But the mistake was not, we think, such as to entitle the plaintiffs to relief. In the first

place a statement by one person, as to what another person is worth, is ordinarily of necessity a mere opinion. It appears to us to be so in this case. In the second place one of the plaintiffs visited the place where Heazlet & Henika lived and did business, for the purpose of ascertaining their financial ability, and had an opportunity to do so. Chancellor Kent in Vol. 2d, p. 485, of his Commentaries, says: "The common law affords to every one reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." Again on the same page he says: "Every person reposes at his peril on the opinion of others, when he has an equal opportunity to form and exercise his own judgment."

Some other things were said by defendant to the plaintiffs, respecting the financial ability of Heazlet & Henika. We do not deem it necessary to consider them in detail. They certainly do not amount to more than a clear statement that Heazlet & Henika were able to pay the debt in question, and that was precisely what Webb Vincent went to Michigan to ascertain.

Several of the statements which the plaintiffs claim were fraudulent cannot be regarded as material. There is evidence tending to show that the defendant said that Heazlet & Henika had promptly paid certain New York merchants of whom they bought goods, and that the statement was untrue. But this is not material. The trade cannot be presumed to have been made in reliance upon such fact. Heazlet & Henika might have been delinquent in their payments for goods and yet abundantly solvent, or they might have paid promptly for goods and been insolvent. The statement alleged to have been made about their payment for goods, and about several other things, were at most statements merely tending to show Heazlet & Henika's financial ability. They were all subordinate to the main and only real question, and that was as to whether Heazlet & Henika were able to pay the claim which the plaintiffs were buying. Upon this question the plaintiffs undertook to judge for themselves, or at least had an opportunity to do so,

and a court of equity cannot relieve them either from a mis-judgment or from carelessness.

As to the value of the two buildings and lots which Webb Vincent saw, he must be presumed also to have formed his own judgment, and to have traded in reliance upon it. The eighty acres he did not see, but there is no evidence that the defendant said anything about the value of it, except that he believed that the security was ample. He did say that one Fred Berry knew more about the land than he did, and Fred Berry said it was good security for sixteen hundred dollars. But this was only Fred Berry's opinion, and if we should treat it under the circumstances as the defendant's opinion, it would not entitle the plaintiffs to relief. No rule is better settled. In *Parker v. Moulton*, 114 Mass., 99, an action was brought by the purchaser of real estate to recover for injury sustained by false representations alleged to have been made by the seller in regard to the value of the property. COLT, J., said: "The affirmations here set forth as between buyer and seller, it has been repeatedly decided, will not support an action, although the defendant knew them to be false when made. They concern the value of the land or its condition and adaptation to particular uses, which are only matters of opinion and estimates, as to which men differ. To such representations the maxim *caveat emptor* applies. The buyer is not excused from an examination unless he be fraudulently induced to forbear inquiries which he would otherwise have made." See, also, *Gordon v. Parmelee et al.*, 2 Allen, 212; *Veasy v. Daton*, 3 Id., 350; *Brown v. Castles*, 11 Cush., 348.

That Webb Vincent did not inspect the land when he went to Michigan was his own fault. This appears so, especially as the defendant did not claim to have much knowledge of it, and requested that the plaintiffs should make an examination and judge for themselves.

Respecting the title, nothing was said by anybody. The defendant had no knowledge that it was defective, and did not, therefore, conceal the defect. Whatever defect there was was apparent of record. The plaintiffs should have examined it or had it examined. A court of equity

2 ——: mort-
gage: defec-
tive title.

cannot relieve a person who purchases a mortgage upon real estate to which the title is defective, unless the seller has made some statement respecting the title upon which the purchaser was justified in relying.

REVERSED.