WILLIAM E. WITHERWAX

v.

DAVID RIDDLE.

*Filed at Ottawa May 12, 1887.*

1. FRAUD—*in an exchange of lands—inadequacy of price, or inequality of value, as an element.* While mere inadequacy of price is not, *per se*, a ground for setting aside a transfer of property, yet it may be so gross and palpable as to amount, in itself, to proof of fraud; and this, in connection with proof of imposition and misrepresentation on the part of the purchaser and his agents, will be sufficient, in a court of equity, to characterize the transaction as fraudulent.

2. In this case, which was upon bill to set aside a contract of exchange of lands, on the ground of fraud, the party complainant, owning one hundred and twenty acres of land, worth $2700 above an incumbrance thereon, and a lot worth $200, was induced by the defendant to give the same, and $100 in money and his note for $412, for three hundred and twenty acres of land owned by the defendant in Wisconsin, which was worthless. The defendant represented to him that the Wisconsin land was good land, worth $10 per acre, though he said he had never seen it. The complainant, being desirous of avoiding expense of going to see the defendant's land, asked him if he could not refer him to some reliable person for information. The defendant referred him to one Lowe, who said he knew the land in the vicinity, and that if the land was improved it was worth $25 per acre, but if unimproved, it was worth $8 or $10 per acre. This proving unsatisfactory, the defendant introduced complainant to one D., who was a man of bad repute and a fugitive from justice, and who represented that he had been on the land; that it was as good as any land in this State, and that the grass grew on it higher than his head. After the trade was completed, defendant advised the complainant to go and see the land, but he, being satisfied with the assurances of the defendant and the two persons named, executed the contract, and conveyed his land and lot for the Wisconsin land: *Held,* that the complainant was entitled to have the contract of exchange set aside, on the ground of fraud.

3. SAME—*when party responsible for representations of others.* Where a party negotiating for the sale or exchange of worthless land in another State, introduces to the other party a fugitive from justice for information concerning his land, whom he represents as acquainted with the property and as a reliable man, who makes false representations concerning the quality and value of such land, he will be responsible for such false statements.

4. In such case, the assurance that the person introduced was a man possessing the information desired, respecting the land, and holding him out as

a reliable man, knowing the contrary, for the purpose of imposing upon the purchaser by a falsehood, is a fraud of itself, and the vendor will not be allowed, in a court of equity, to profit by a sale or exchange thus effected.

5. SAME—*negligence of party defrauded.* Where the owner of worthless land, by his own false representations of the quality and value of the same, and those of others, which he procures to be made, induces another to rely upon the same as true, and to purchase the land, the vendor will not be allowed to defeat a bill to rescind the sale by the failure of the purchaser to examine the land, although he may advise him to go and see the same at the time the deed is being drawn.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. THOMAS J. SUTHERLAND, for the appellant:

The decree was not authorized by the allegations of the bill or by the evidence. The burden was on complainant, and the facts should have been clearly and positively averred, and the bill (pleading) must be taken most strongly against the complainant (pleader.) *Klein* v. *Horine*, 47 Ill. 430; *Primmer* v. *Patten*, 32 id. 528; *Happy* v. *Morton*, 33 id. 398.

No decree against appellant could therefore be based upon this bill, notwithstanding what the evidence might disclose, nor should any injunction have been granted against appellant. *Pettillon* v. *Hipple*, 90 Ill. 424; *Jackson* v. *Miner*, 101 id. 550; *Life Ins. Co.* v. *Slee*, 110 id. 36; *Kidder* v. *Vandersloot*, 114 id. 133; *Parker* v. *Shannon*, id. 192; *Walker* v. *Ray*, 111 id. 315; *Smith* v. *Brittenham*, 98 id. 199; *Pinneo* v. *Goodspeed*, 104 id. 184; *Johnston* v. *Worthington*, 8 Bradw. 322.

The bill does not state a case on which any relief could be granted, and the evidence is insufficient to sustain an allegation of fraud against appellant. *Schramm* v. *O'Connor*, 98 Ill. 543; *Noetling* v. *Wright*, 72 id. 390; *Tone* v. *Wilson*, 81 id. 529; *Merwin* v. *Arbuckle*, 81 id. 501; *Roper* v. *Sangamon Lodge*, 91 id. 520; *Ladd* v. *Pigott*, 114 id. 651; *Covert* v. *Nolan*, 10 Bradw. 629; *Dillman* v. *Nadlehoffer*, 19 id. 380.

Mr. CHARLES H. ROBERTS, for the appellee:

While inadequacy of price will not, of itself alone, be ground of avoiding a contract, yet when there are other ingredients in the case, of a suspicious nature, or a peculiar relation existing between the parties, gross inadequacy of price will furnish the most vehement presumption of fraud. *Reed* v. *Peterson*, 91 Ill. 288; 3 Wait's Actions and Defences, 445.

When a vender employs another to make representations, it is the same as if they were made by him. *Ranger* v. *Railway Co.* 5 H. L. Cases, 86.

Even if appellant did not know the value of the Wisconsin land, this is no defence. It is not necessary that he knew the representations to be false, if they were material, and the other party had a right to and did rely on them. *Allen* v. *Hart*, 72 Ill. 104; *Mitchell* v. *McDonald*, 62 id. 498; *West* v. *Wright*, 98 Ind. 335.

The bill is not defective, but if it was, a defective pleading is aided by verdict. *Ladd* v. *Pigott*, 114 Ill. 652.

Witherwax, even if originally innocent, in refusing to reconvey, adopted the fraud of the agent.

Where the principal attempts to reap advantage from the fraud of the agent, the principal will be bound by the fraud, and relief given. 1 Perry on Trusts, (3d ed.) p. 201, sec. 172; *Cornfoot* v. *Fouke*, 6 M. & W. 381.

Distinction as to proof between actions on case for deceit and bills for rescission, is given in *Udell* v. *Atherton*, 7 H. & N. 30, L. J. Ex. 337, and commented on in Benjamin on Sales, (3d Am. ed.) sec. 463. Proof of knowledge on the part of the principal is required in the latter, only.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by David Riddle, against William D. Witherwax, to rescind a trade in real estate, wherein the complainant exchanged a farm, consisting of one hundred and twenty acres of land in Whiteside county, and

a lot in Sterling, for three hundred and twenty acres of land in Adams county, Wisconsin. The bill charged fraud, on the part of defendant, in the description of the character, quality and value of the Wisconsin land, and upon this ground, mainly, a rescission of the trade was prayed for by the complainant. The defendant put in an answer to the bill, in which the allegations of fraud were denied. A replication was filed to the answer, and the cause proceeded to a hearing, on the pleadings and evidence, which resulted in a decree in favor of the complainant. The defendant appealed.

The first ground of error relied upon to reverse the decree is, that the decree was not authorized by the allegations of the bill. We shall not stop to set out the various allegations of the bill, but upon an examination of the different averments, as shown by the record, we regard them sufficient to authorize the decree. The representations constituting the fraud are detailed and fully set out, together with the *scienter,* and intent on the part of the defendant to deceive and defraud complainant, and we are aware of no rule which requires a more specific statement than is to be found in the bill.

The main ground, however, relied upon to reverse the decree is, that it is not sustained by the evidence contained in the record. It appears, from the evidence, that the complainant owned a farm of one hundred and twenty acres of land in Whiteside county, encumbered by a mortgage of $1600. The farm was worth, over and above the mortgage, $2700. He also owned a lot in Sterling worth $200. The farm and lot were given to the defendant in exchange for three hundred and twenty acres of land in Adams county, Wisconsin, and the complainant paid, in addition, cash $100, and gave his note and a mortgage on the Wisconsin land for $412. At the time of the trade, September 9, 1885, both of the parties resided in Chicago, but they had formerly resided in Whiteside county, and the defendant was well acquainted with the complainant's property, while the complainant had

no knowledge whatever of the quality or value of the Wisconsin land. The defendant estimated his land to be worth $10 per acre, although he represented that he had never seen it, but claimed that it was good farming land. The complainant was anxious to avoid the expense of going to see the land, and inquired of defendant if he could not refer him to some good, reliable man, who could inform him in regard to it. Defendant thought he could, and in a subsequent conversation he informed complainant that he had found a man who could tell him all about the property. A short time after this interview the defendant accompanied the complainant to the Afton House, in Chicago, and introduced him to a Mr. Lowe, who could furnish the desired information. Mr. Lowe referred to a map, and said "he knew most every bit of land around there, but could not just locate Witherwax's land." He, however, informed complainant that they grew corn, rye and big clover where the land was located, and that defendant's land, if improved, was worth $25 per acre; that unimproved land was worth from $S to $10 per acre. The statement of Lowe did not prove quite satisfactory, and a short time after this interview the defendant brought a Mr. Duffield, and introduced him to complainant as residing at Rock Falls, and stated that he could inform complainant all about the land. Duffield informed complainant that he had been on the land, and that it was as good as could be found in this State,— better than any land in Whiteside county; that the grass grew so tall and rank on the land, that he "stood up and pulled the grass over his head." These statements proving to be satisfactory, the trade was concluded. The representations, however, in regard to the land, proved to be utterly false. The land in Wisconsin, upon investigation, turned out to be worthless. The witnesses who reside in the locality, and who knew the land, testify that it is a hilly, rough, barren piece of sandy land, with some scrub timber on it. Some of the witnesses testify that it is worth nothing, while others put

the value at from seventy-five cents to $1.25 per acre. Duffield, whom defendant introduced to the complainant as a suitable person to give complainant information in regard to the land, turned out to be a worthless character, and a fugitive from justice.

These are, in the main, the leading facts which led to the exchange of lands between the parties, and we have no hesitation in holding, with the trial court, that the trade was brought about by fraudulent means. That the complainant's farm was worth $2700, and the lot in Sterling $200, is not disputed, nor did the defendant undertake to contradict the evidence of complainant, which established the fact that the Wisconsin land was worthless. The record therefore discloses that complainant turned over to the defendant over $3000 for property which is worthless.

Mere inadequacy of price is not, *per se*, ground for setting aside a transfer of property, yet it may be so gross and palpable as to amount, in itself, to proof of fraud, and this, in connection with proof of imposition and misrepresentation on the part of the purchaser and his agents, will be sufficient to characterize the transaction as fraudulent, in a court of equity. (*Reed* v. *Peterson*, 91 Ill. 289.) Here is a gross disproportion between the properties of the two parties, and false representations in reference to the quality and value of the Wisconsin land, which are sufficient to bring the case within the rule indicated in *Reed* v. *Peterson*. It may be said that the defendant made no representations in regard to the quality of the Wisconsin land, and hence is not chargeable with fraud in the transaction. We think that the defendant is so connected with the statements and declarations of Lowe and Duffield, made to complainant in regard to the land, that he is bound by those statements. The defendant admits, in his answer, that he told complainant that he knew two parties, one of whom was Duffield, that could inform him in regard to the land, and that he put the complainant in communi-

cation with them, and the evidence clearly shows that the defendant took these two parties to the complainant, and held them out to him as men who could give him the desired information in regard to the land. Under such circumstances he ought to be held responsible for what they said in reference to the land. The defendant had no right to introduce Duffield to complainant, and hold him out as reliable, and one possessing the information in regard to the land, unless he expected to be bound by what he said. If Duffield was a fugitive from justice,—a man of bad repute,—it was a fraud of itself for the defendant to impose him on complainant as a reliable man, when he knew otherwise. The very object of taking Duffield to complainant was to impose upon him by falsehood. A party ought not to profit, in a court of equity, by a practice of this character.

But it is said that complainant had ample opportunity to go and examine the lands after the trade was concluded, before deeds were exchanged, while abstracts were being prepared, and that defendant expressed a desire that complainant should do so when the deeds were being prepared, and that complainant said he was satisfied. There is the evidence of the scrivener who prepared the deeds, on this subject; but we do not regard anything that was then said or done, of a character sufficient in importance to defeat the complainant of a recovery. He had been led to believe by the defendant that the information he had received in regard to the land was reliable. Nothing had then occurred to excite his suspicion, or that of a prudent man, and the fact that defendant may then have advised that the land should be seen, after he had convinced complainant of its good qualities without seeing it, is of but little importance.

In conclusion, we think the evidence fully sustains the decree of the Superior Court, and it will be affirmed.

*Decree affirmed.*