## HORTON, Respondent, vs. LEE, Appellant.

*March 22 — April 6, 1900.*

*Fraud: Conspiracy to induce exchange of lands: Evidence: Misrepre-
sentations of value: Failure to examine.*

| | |
|---|---|
| 106 | 439 |
| 111 | ³559 |
| 106 | 439 |
| 115 | ³ 17 |

1. That alleged confederates in a conspiracy to defraud one of his real
   estate by inducing him to exchange it for other property of little
   value were such in fact, may be established by circumstantial evi-
   dence.
2. The conduct of the owner of land worth $1,800 in trading it for land
   in a distant county, of comparatively little value, without any
   personal knowledge or attempt to gain personal knowledge thereof,
   is not reasonably explained by evidence tending to show that he
   was anxious to place his land beyond the reach of his sister who
   he feared would make some claim on account of it.
3. If property offered for sale or exchange be in a distant locality, and
   the vendee, to the vendor's knowledge, has no personal informa-
   tion in regard to it, and the latter misrepresents its value or qual-
   ity for the purpose of inducing a trade and by artifice prevents
   the former from seeking information elsewhere or by a personal
   examination of the property, such misrepresentations are not mere
   expressions of opinion, but misrepresentations in respect to a ma-
   terial fact, satisfying the calls of actionable fraud in that regard.

4. Where by means of a fraudulent conspiracy in such a case the defrauded party had been thoroughly convinced that by trading he could turn his farm into money for much more than its real value, pretended indifference on the part of the owner of the distant land, and intimations that the former should examine it before making the trade, are not evidentiary of fair dealing and freedom from fraudulent purpose on the part of the latter.

APPEAL from a judgment of the circuit court for Jefferson county: B. F DUNWIDDIE, Circuit Judge. *Affirmed.*

Action to avoid a deed for fraud. The issues raised by the pleadings are indicated in findings and conclusions, in substance as follows:

Plaintiff, when the transactions occurred leading up to and inclusive of the particular act in controversy, was a weak-minded man about fifty years of age to the knowledge of defendant, who had been on intimate terms with him for many years. August 27, 1898, plaintiff owned land in Dane county, Wisconsin, of the value of about $1,800, and defendant owned land in Adams county, Wisconsin, obtained about one year before at a cost of about $17 and worth not to exceed $400. In the spring of 1898 plaintiff, at defendant's request, accompanied him to Madison, Wisconsin, and on the way described his Adams county land as suitable for a good farm, stating that he had refused $3,000 for it. On arriving at Madison defendant went to a saloon, ostensibly to see a Miss Jones to inquire about her brother, inducing plaintiff to accompany him. Defendant took the plaintiff, by a side door of the saloon building, into a sitting room where a woman was found and introduced by defendant to plaintiff as Miss Jones. Plaintiff had never seen the woman before. Soon after the introduction defendant went away, promising to return soon. Upon plaintiff and Miss Jones being left alone, she began to talk about defendant's Adams county land, stating, among other things, that a railroad was going to be built through it, that a station would be located thereon,

that her brother, a railway superintendent, wanted to obtain the land, knowing of its prospective value, and that if plaintiff would purchase it for her and her brother for $3,000 she would pay him $50 for his services, and suggested that he obtain the land by trading his Dane county land for it.

Thereafter defendant again caused plaintiff to accompany him to see Miss Jones, when she urged plaintiff anew to trade his Dane county land for the Adams county land, saying she and her brother would give $3,500 for the latter if plaintiff would obtain it for them. Subsequent to plaintiff's first meeting with Miss Jones she wrote him five letters, urging him to obtain defendant's land for her and her brother, and offering to take it off his hands as indicated. Some of the letters purported to have been written at Room 3, Capital House, Madison, at which place and time there was no person by the name of Miss Jones. One letter was mailed at defendant's post-office address. During the period mentioned a man pretending to be the brother of Miss Jones visited plaintiff and urged him to obtain defendant's Adams county land, holding out inducements like those presented by his so-called sister.

By the influences on plaintiff indicated, the said statements made to him being relied upon as true, he was induced to trade and convey his land and twenty-five bushels of rye to defendant for the Adams county land. The statements made as aforesaid to induce plaintiff to trade his land to defendant were false, fraudulent, and a part of a fraudulent scheme entered upon and carried out by defendant, by the aid of the so-called Miss Jones and her so-called brother, all acting in concert by defendant's procurement, for the purpose of defrauding plaintiff out of his land by obtaining it for the Adams county land. Plaintiff did not discover or appreciate the fraud perpetrated upon him by defendant, by aid of his said confederates, till shortly before the commencement of this action. Plaintiff is entitled to

judgment annulling his deed of the Dane county land, upon condition of his reconveying to defendant the Adams county land and paying into court, for the latter's benefit, his expenditures for taxes on the Dane county land, with interest thereon from December 28, 1898.

In accordance with the foregoing, judgment was rendered for plaintiff, from which this appeal was taken.

For the appellant there was a brief by *Clancey, Loverud & Gilman,* and oral argument by *J. M. Clancey.*

*Rufus B. Smith,* for the respondent.

MARSHALL, J. The findings of fact cannot be disturbed under the familiar rule governing the review, on appeal, of cases tried without a jury. It is useless to incumber the records here by a discussion of the evidence which leads to that conclusion, and which, to our minds, tends strongly to prove the existence of every material fact necessary to support the judgment.

True, on the vital question of whether the alleged confederates of defendant were such in fact there is no direct evidence, but that is not material. Fraud is generally worked by secret ways so as to prevent the existence of direct evidence of it if possible. It would often succeed where failure happens if it were not for the salutary principle that facts may as well be established by circumstantial as by direct evidence. Where circumstances are satisfactorily proved, pointing so strongly to the existence of an act essential to actionable fraud as to warrant the conclusion that it clearly characterized the transaction challenged, such act stands proved for the purpose of the controversy, though there may not be a particle of direct evidence in regard to it.

It is confidently contended by appellant's counsel that respondent's conduct in trading off his Dane county land, worth $1,800, for land in a distant county, of comparatively little value, without any personal knowledge or attempt to

gain any personal knowledge thereof, is explained by evidence tending to show that he was anxious to place the Dane county land beyond the reach of his sister who he feared would make some claim on account of it. That can hardly be said to be a reasonable explanation of respondent's actions. It might stand as an explanation of his desire to dispose of the Dane county land, but not of his willingness to practically give it away. If he wanted to place the land beyond the reach of his sister, it would be unreasonable to say that he was willing to do that regardless of obtaining an equivalent for it.

The circumstance referred to does not furnish any explanation for the failure of respondent to visit the Adams county land to find out whether it was a fair equivalent for the Dane county land,— none whatever. There is no reasonable theory disclosed by the evidence to explain that failure, except that respondent was weak-minded and utterly incompetent to do business, or he was made to believe, by appellant and his confederates, that the Adams county land was valuable for a farm, and specially valuable to an extent much in excess of the Dane county land because it was in the pathway of a located railway about to be constructed, that parties actually stood ready to take it for over $3,500, and that appellant and such confederates purposely imposed upon respondent to prevent his personally examining the land, and accomplished such purpose, and in that way consummated the fraud alleged. That theory was adopted by the trial court, and certainly there is no clear preponderance of the evidence against such theory.

But it is said that, conceding the findings of fact to be correct, they disclose at most a mere false opinion as to the value of the Adams county land, a promise to do something in the future without any intention to redeem the promise, and representations as to other future matters, and that such misrepresentations, if they can be called such, were not of

material facts, and therefore will not void a sale induced thereby on the ground of fraud.

True, generally speaking, a mere opinion as to the value of property offered for sale, however extravagant, will not void the sale, if one be thereby made, on the ground of fraud. *Maltby v. Austin,* 65 Wis. 527; *Fowler v. McCann,* 86 Wis. 427. Neither will a false representation as to future matters, or a promise to do some act in the future which the promisor does not intend to perform. *Patterson v. Wright,* 64 Wis. 289. The rule as to representations of value applies strictly only where the parties are dealing at arm's length and on equal terms. It does not apply where the relations between them are of a fiduciary character or of trust and confidence, or the person to whom the representations are made is incompetent to do business or knows personally nothing about the subject of the sale and is ·purposely induced, by the conduct of the vendor, not to inform himself but to act under the advice of such vendor and the influences by him used to that end.

While there is some conflict, by the great weight of authority the law is, as laid down by the text writers and the courts, that if property, offered for sale or exchange, be in a distant locality, and the vendee, to the vendor's knowledge, has no personal information in regard to it, and the latter misrepresents its value or quality for the purpose of inducing a trade and by artifice prevents the former from seeking information elsewhere or by a personal examination of the property, such misrepresentations are not mere expressions of opinion, but misrepresentations in regard to a material fact, satisfying the calls of actionable fraud in that regard. Many cases might be cited to that doctrine, in many of which the facts are similar to those disclosed in this case in all essential particulars. The following are but a few of such cases: *Witherwax v. Riddle,* 121 Ill. 140; *Harris v. Mc-Murray,* 23 Ind. 9; *Cressler v. Rees,* 27 Neb. 515; *McKnight*

Horton vs. Lee.

*v. Thompson*, 39 Neb. 752; *Simar v. Canaday*, 53 N. Y. 298; *Saunders v. Hatterman*, 2 Ired. Law, 32; *Henderson v. Henshall*, 54 Fed. Rep. 320; *Chrysler v. Canaday*, 90 N. Y. 272; 1 Bigelow, Fraud, 496.

In *McKnight v. Thompson, supra*, the defendant represented the value of three city lots located in the city of Topeka, Kansas, owned and offered by him for sale to the plaintiff, to be $1,000. Plaintiff lived a considerable distance from the property, and to defendant's knowledge did not possess any information whatever of their value except what was directly and indirectly furnished by him. Defendant, in order to confirm his statements as to the value of the property, caused a letter, written by the cashier of the First National Bank of Topeka to a person supposed to be in no way connected with defendant, stating that in his judgment the property was worth from $150 to $200 per lot, to be so changed as to indicate that the writer's judgment was that the lots were worth from $350 to $400 per lot, and as so changed delivered to plaintiff, whereby he was induced to deal with defendant without making a personal investigation regarding the value of the property. The wrong was held to be actionable on the ground of fraud, the court saying that, while it is " undoubtedly the rule, where the buyer is acquainted with the property and its value, or where he has negligently omitted to make inquiries for the purpose of ascertaining the real condition of the property," that the maxim *caveat emptor* applies, " the rule, however, is otherwise where the purchaser resides at considerable distance from the location of the property which is the subject of the negotiations and is prevented from examining it or from making inquiries as to its value and condition by the fraud of the seller. In such case a false assertion concerning value will not be regarded as a mere expression of opinion, but will be treated as an affirmation of fact."

To the same effect is *Witherwax v. Riddle, supra*, where the circumstances were strikingly like those under consideration. It involved an exchange of lands owned by the plaintiff in Whiteside county, Illinois, with which both parties were acquainted, for lands owned by the defendant in Adams county, Wisconsin, the quality and value of which was known to the defendant but entirely unknown to the plaintiff, of whose ignorance in that regard the defendant well knew. Both parties, at the time of the trade, resided in Chicago. The defendant previously resided in Whiteside county. Defendant stated to plaintiff that the Adams county land was worth $10 per acre. Plaintiff, wishing to avoid the expense of a trip to see the land, asked the defendant to refer him to some one who could corroborate the defendant's judgment as to the value. Thereupon defendant caused plaintiff to go with him to a hotel in Chicago and there introduced him to a Mr. Lowe who pretended to know generally about the land and said it was worth from $8 to $10 per acre in its natural state and $25 per acre improved. Plaintiff not being satisfied, defendant caused a Mr. Duffield to corroborate Lowe and to tell the plaintiff, among other things, that the land was better than the Whiteside county land. That did the work, and the trade was consummated. The land in Adams county turned out to be comparatively worthless. Duffield knew nothing about the land, in fact, and was a disreputable character, used by the defendant to impose upon and mislead the plaintiff. The court held that the defendant was guilty of actionable fraud; that he was responsible for every step in the scheme resorted to to ensnare the plaintiff and induce him to part with his property in Whiteside county for the Adams county land without any personal investigation of the value of what he was getting. The facts, it will be noted, fit the instant case almost as well as if they had been used for a model by appellant, omitting the element of openly referring the vendee to the confeder-

ates for information.  The turning point, in the cited case, was that the vendor fraudulently prevented the vendee from obtaining information regarding the Adams county land outside of that furnished by him and those working in his interest.

To the same effect is *Henderson v. Henshall*, 54 Fed. Rep. 320.  There a third party, ostensibly acting independent of the vendor, was introduced to the vendee to make false representations as to the value of the property.

Further reference to authorities is not necessary to show that this case does not come within the general rule relied upon by appellant's counsel, that false statements of value, which should be treated as mere matter of opinion made by a vendor in the course of negotiations for the sale of his property, will not satisfy the call for misrepresentations as to a material fact essential to actionable fraud.  While the rule is well established that misrepresentations of the value of property in the circumstances indicated, however false and whatever be the intent of the vendor in making them, if there be no other wrongful element in the transaction consummated thereby, to the damage of the vendee, do not constitute actionable fraud, yet, if the vendee, to the knowledge of the vendor, is unacquainted with the subject of the sale and it is located in a distant section of the country, and by some artifice or trick on the part of the vendor the vendee is induced to purchase the property relying solely on the truth of the vendor's statement and the representations of others, acting in his interests and by his procurement, in regard to the value of the property, and such representations are false and result in damage to the vendee, the vendor is guilty of actionable fraud.  Statements as to value, made under such circumstances, cannot be regarded as mere opinions which the vendee, as a man of reasonable prudence, cannot act upon except at his peril.  They are statements of

material facts which the vendor, in good morals as well as in law and equity, is bound to make good to the person who has been victimized thereby.

The foregoing rules this case in favor of the respondent, even if the element were out of it that he is a weak-minded man and incompetent to do ordinary business, to the knowledge of the defendant.   On the facts found, appellant laid a trap and used the pretended Miss Jones and her so-called brother to lure the respondent into it.   The idea was first given to respondent by appellant, ostensibly in neighborly confidence, that the Adams county land was worth $3,000, could be sold for that, and was suitable for a valuable farm. Having planted that seed in respondent's mind, appellant caused it to be industriously cultivated by his confederates while he remained in the background, till respondent was thoroughly convinced that the Adams county land was worth much more than his Dane county land, and that by trading the latter for the former he could turn his land into money at much more than its real value.   At that stage of operations, while respondent was firmly held and prevented from visiting the Adams county land, or investigating as to its value outside of the region of appellant's influence, by the web adroitly and secretly woven about him, appellant pretended to listen with indifference to respondent's suggestions of a trade of the Dane county land for the Adams county land, intimating that the respondent should examine the latter before making such a trade.   Appellant's conduct at this point, instead of being evidentiary of fair dealing on his part and freedom from a fraudulent purpose, shows that it was shrewdly calculated to be the best possible way of consummating the fraudulent scheme before respondent could discover the manner in which he had been imposed upon.   The suggestion to respondent to visit the land after he had been educated to believe he could safely trade for it

without any investigation, was an exact repetition of a circumstance that characterized the case of *Witherwax v. Riddle*, 121 Ill. 140.

The law is clear on the facts found by the trial court, which we hold must stand as verities in the case, that the judgment of the court declaring the deed obtained by the appellant void was right and must be affirmed.

*By the Court.*— So ordered.