### J. M. HETLAND, Appellant, v. T. S. BILSTAD.

**Words and Phrases:** VALUE: MARKET VALUE. The term value as
1 applied to property and as commonly understood is the equivalent of market value, and is used interchangeably with the expressions actual value and salable value; and the expressions "present value" of land, and "it is worth" a certain sum may be understood as referring to the market value and will support a finding to that effect.

**Same:** CASH MARKET VALUE. In the absence of qualification a sale
2 on the market is presumed to be for cash, and therefore the expressions "market value" and "cash market value" are equivalent in meaning.

**Fraud:** FALSE REPRESENTATIONS AS TO VALUE. As a general rule, mere
3 expressions of opinion as to the value of property when standing alone do not constitute actionable fraud; but where the property is so situated that the parties do not stand on an equal footing and the seller knows that reliance is placed upon his statements, his representations as to value made with intent to deceive the purchaser, if false, amount to an affirmation of fact upon which fraud may be predicated.

**Fraud:** REPRESENTATIONS AS TO CHARACTER OF LAND. Representations
4 that land is free from weeds and so situated that surface water drains from it and none flows onto it from surrounding lands, while if necessarily relating chiefly to the character of the lands, still may be so stated as to constitute statements of

fact, and if falsely made with intent to deceive are actionable; and whether representations of fact or mere expressions of opinion is for the jury to determine.

**Same:** EVIDENCE OF VALUE. Under a claim that surface water did not flow onto a tract of land, it was proper to permit a witness to state its market value in response to a question describing it as "where no water could get on the land except that it would fall on it," as the expressions are equivalent in meaning.

**Drainage:** NONEXPERT EVIDENCE. A nonexpert witness should not be allowed to testify over objection that it is impossible to drain land in a certain direction, but where it appeared that he had reference only to the natural drainage of the surface water, admission of the testimony was not prejudicial.

**Examination of witnesses:** DISCRETION. Permission to a party to explain his testimony is discretionary, and in the absence of an abuse of the discretion the court's action will not be disturbed.

**Instructions:** REFUSAL. Refusal of an instruction not sustained by the record is not erroneous, although abstractly correct.

**Fraud:** FAILURE TO PROCURE INFORMATION. The fact that one purchasing property does not obtain information regarding the same which ordinary prudence would dictate will not defeat recovery for fraud, where he relied on the seller's misrepresentations.

**Fraud:** CONFIDENTIAL COMMUNICATIONS. Where one pretends to act as a confidential adviser, and therefore confidence is reposed in him, there may be a recovery by one sustaining injury thereby.

**Verdict:** SPECIAL FINDING: CORRECTIONS: DISCHARGE OF JURY. Where the jury's answer to a special interrogatory was by their mistake not in conformity with the general verdict in a matter of computation, and upon their attention being called to the fact they promptly informed the court before their separation of the manner of computation, which disclosed the correctness of the verdict and the error in the special finding, there was a timely repudiation of the finding; and even though it had been agreed upon by the parties, supposing the error to be in the verdict, that the court should correct it and the jury be discharged, still the agreement not having been acted upon it was proper to permit one of the parties to. withdraw therefrom and if a correct special answer was desired, the jury should have been allowed to return it, but the party objecting thereto and insisting upon a discharge of the jury under the agreement cannot complain that this was not done.

Deemer, J., concurring.

*Appeal from Webster District Court.—*HON. W. D. EVANS, Judge.

TUESDAY, NOVEMBER 24, 1908.

ACTION on a note for $1,500 executed to plaintiff by defendant April 23, 1904, payable December 1, 1905, with interest at the rate of seven percent per annum. The defendant admitted the execution of the note, but alleged by way of counterclaim that it was given in part payment of 1,280 acres of land in Norman County, Minn., and that defendant was induced by fraud to purchase the same to his damage in the sum of $19,200. There was a trial by jury, which resulted in a judgment in favor of defendant. The plaintiff appeals.—*Affirmed.*

*H. W. Stowe* and *F. H. Peterson,* for appellant.

*Chantland, Hadley & Graham* and *Kelleher & O'Connor,* for appellee.

LADD, C. J.—In April, 1904, the defendant purchased of plaintiff two sections of land in Norman County, Minn., at the price of $30 per acre; the first payment being a stock of hardware at Callender, Iowa, subsequently invoiced at $4,000. The issues raised by the pleadings and submitted to the jury were whether defendant was induced to make such purchase by the intentional misrepresentation on the part of plaintiff that said land was first class and well adapted for farm purposes, and the raising of standard small grain such as is produced in that vicinity, that it was not subject to overflow either from the river or drainage thereon from the surrounding lands, that it had produced a good crop in quality and quantity every year since cultivated, that the water on some portions of the

land when looked at by defendant was temporary, being the result of a recent snowstorm, and that the market value of the land was $30 per acre. Without reviewing the evidence it is enough to say that, if admissible, it was sufficient to sustain the verdict. Other issues were eliminated by the instructions, and, as nearly if not quite all of the evidence bearing thereon related to the transaction under investigation, no prejudice resulted from its introduction. A wide latitude ordinarily is allowed in such inquiries, to the end that the jury have the fullest information of the entire transaction and be in a situation accurately to determine whether deceit has been practiced or that the charge is unfounded. As many of the sixty-four errors assigned involve the same point, each will not be separately considered.

I. Appellant first contends that there was no evidence of any representation of the market value of the land. The words "market value" are said not to have

1. Words and Phrases: value: market value.

been used, but the witness did testify that plaintiff stated that "it was cheap at $30 per acre," that "the present value of this land is $30, easy enough," that "it was worth $30 per acre." By "value," in common parlance, is meant "market value," which is no other than the fair value of property as between one who wants to purchase and another who desires to sell. In *Jones v. Noel,* 98 Tenn. 440 (39 S. W. 724, 36 L. R. A. 862), it is said that "so difficult a matter, however, is it to separate the ideas of 'value' and 'market value,' that it will be found text-writers and courts have frequently used these terms as interchangeable, and both as being the equivalent of 'actual value,' 'salable value,' and, in proper cases, 'rental value.'" See, also, *Chase v. City of Portland,* 86 Me. 367 (27 Atl. 1104); *Sanford v. Peck,* 63 Conn. 486 (27 Atl. 1057); *Howes v. Atell,* 74 Iowa, 400. The expressions quoted, if made, were to one unfamiliar with the land and prices in

the neighborhood, and might well be construed as refer-
ring to the value obtainable for such land on fair nego-
tiation between one proposing to buy and another offering
to sell; and, if so, were sufficient to sustain a finding that
the market value was represented to be $30 per acre.

In another connection counsel seek to distinguish be-
tween "market value" and "cash market value." In the
2. SAME: cash      absence of qualification, sale on the market
market value.   is presumed to be for cash, and for this
reason courts have held the expressions to be equivalent in
meaning. *Brown v. Calumet River R. Co.,* 125 Ill. 600
(18 N. E. 283); *Manchester Fire Ins. Co. v. Simmons,*
12 Texas Civ. App. 607 (35 S. W. 722).

II.   Even though plaintiff did represent the land to
be worth $30 per acre, it is insisted that this was mere
matter of opinion, and it is to be said that ordinarily the
3. FRAUD: false    assertion that any property is of a specified
representations value is treated as an opinion. *Bosley v.*
as to value.    *Monahan,* 137 Iowa, 650; *Bossingham v.*
*Syck,* 118 Iowa, 192. And a finding of fraud can not
be predicated on expressions of opinion only. *Vincent v.*
*Berry,* 46 Iowa, 571; *Lucas v. Griffen,* 76 Iowa, 507.
But, as was observed in the case last cited, causes may
arise where such representations will be regarded as state-
ments of fact. Parties in negotiating deals have the right
to exalt the value or quality of their own property to the
highest point credulity will bear, provided their efforts
in this line go no further than puffing or praise which the
vendor may properly indulge in; but statements of value
or of quality may be made with the purpose of having them
accepted as of fact, and, if this is done and so relied on,
they are to be treated as the parties designed they should
be, namely, representations of fact. *Mattauch v. Walsh,*
136 Iowa, 225. In that case the court said: "The evi-
dence in behalf of plaintiff clearly indicated the intention
of Walsh that his assertion of the value of the land should

be acted upon as true, and not merely as his estimate, and, if so, and it was knowingly false and induced an exchange by plaintiff to her damage, it was actionable." This is fully sustained by the authorities. *Hickey v. Morrell,* 102 N. Y. 463 (7 N. E. 325, 55 Am. Rep. 824); *Culley v. Jones,* 164 Ind. 168 (73 N. E. 94); *Murray v. Tolman,* 162 Ill. 417 (41 N. E. 748); *McKnight v. Thompson,* 39 Neb. 752 (58 N. W. 453); *People v. Pickens,* 153 N. Y. 576 (47 N. E. 883); *Horton v. Lee,* 106 Wis. 439 (82 N. W. 360); *McDonald v. Smith,* 139 Mich. 211 (102 N. W. 669); *Stack v. Nolte,* 29 Wash. 188 (69 Pac. 753); *Mountain v. Day,* 91 Minn. 249 (97 N. W. 883); *Morgan v. Dinges,* 23 Neb. 271 (36 N. W. 544, 8 Am. St. Rep. 121).

The rule is forcibly stated in *Murray v. Tolman, supra:* "Where the vendee is wholly ignorant of the value of the property, and the vendor knows this, and also knows that the vendee is relying upon his (the vendor's) representations as to the value, and such representation is not a mere expression of opinion, but is made as a statement of fact, which statement the vendor knows to be untrue, such a statement is a representation by which the vendor is bound." In *People v. Pickens,* 153 N. Y. 576 (47 N. E. 887), the court said: "As a general rule, the mere expression of an opinion, which is understood to be only an opinion, does not render a person expressing it liable for fraud; but where the statements are as to value or quality, and are with an intent to deceive and mislead the one to whom they are made, and he is thus induced to forbear making inquiries which he otherwise would, they may amount to an affirmation of fact rendering him liable therefor. In such a case whether a representation is an expression of an opinion or an affirmation of a fact is a question for the jury. The rule that no one is liable for an expression of an opinion is applicable only when the opinion stands by itself as a distinct thing. If it is

given in bad faith, with knowledge of its untruthfulness, to defraud others, the person making it is liable, especially when it is as to a fact affecting quality or value, and is peculiarly within the knowledge of the person making it." As said in *Horton v. Lee, supra*: "The rule as to representations of value applies strictly only where the parties are dealing at arm's length and on equal terms. It does not apply where the relations between them are of a fiduciary character or of trust and confidence, or the person to whom the representations are made is incompetent to do business, or knows personally nothing about the subject of the sale, and is purposely induced, by the conduct of the vendor, not to inform himself but to act under the advice of such vendor and the influences by him used to that end. While there is some conflict, by the great weight of authority the law is, as laid down by the text-writers and the courts, that if property, offered for sale or exchange, be in a distant locality, and the vendee, to the vendor's knowledge, has no personal information in regard to it, and the latter misrepresents its value or quality for the purpose of inducing a trade and by artifice prevents the former from seeking information elsewhere or by a personal examination of the property, such misrepresentations are not mere expressions of opinion, but misrepresentations in regard to a material fact, satisfying the calls of actionable fraud in that regard." The matter is concisely stated in Cooley on Torts (3d Ed.) vol. 2, page 922: "If the land is at a distance, so that examination is impossible or impracticable, or if any deception or artifice is used to prevent examination or to throw the purchaser off his guard, then false representation as to value may be actionable."

The situation is somewhat like that of an expert who undertakes to impart information on a subject not generally understood. By the authorities generally, those to whom such information is imparted may rely thereon as

a statement of fact. A person in giving an opinion on value or quality as one having special knowledge on the subject to another known by him not to be possessed of any knowledge thereof is in a similar situation, and it is material whether we say that the expression of an opinion in such a case amounts to a statement of fact, or that the opinion is so expressed as impliedly to represent facts which will support it as is sometimes said. Certain it is that opinions of value and quality may be so made as to constitute representations of fact. To hold otherwise would open a fruitful field for the exploitation of dishonest ingenuity and render courts powerless to correct some of the gravest wrongs. The particular artifice resorted to in order to induce a purchaser not to inquire or examine, but to rely implicitly on the representations of the seller, may be as variable as the schemes ingenuity can invent; but perhaps deceit through misrepresentation of value is the more frequently accomplished through protestations of friendship and relations of confidence than otherwise. The fact of familiarity furnishes a basis upon which to build the fabric of fraud, and when resorted to, and the victim is led to believe that, owing to the confidence he may repose in the seller, he can treat his expressions of opinion as statements of fact, and the seller so intends and purposely misstates such opinions in order to deceive, this amounts to actionable fraud and is so generally held. The instructions of the court and rulings on the admissibility of evidence were in harmony with what we have said and have our approval.

IV. Evidence was received tending to show that plaintiff represented the land to be free from weeds, and that it so lay that the water drained from it, and none

4. FRAUD: representations as to character of land. onto it from surrounding lands, and that these statements were untrue. The objection is that these were mere matters of opinion and not representations of facts. In nearly all land there

is enough seed to require constant exertion for weed extermination and of necessity statements of the kind above mentioned relate largely to the quality of the land. Nevertheless, such statements, as indicated in what we have said, may be representations of fact, if so intended. The same is true with reference to drainage. The representations claimed pertained to the levels of this and surrounding tracts. When a person looks over a large area of land which is comparatively level, his expressions with reference to drainage may be, and ordinarily are, mere matters of opinion. On the other hand, they may be so stated as to constitute representations of fact. Whether what plaintiff said were representations of fact, or mere opinions with reference to the quality of the land, was for the jury to say. In any event, they were not submitted to the jury as independent grounds of recovery, but required a finding in connection with other representations heretofore referred to. The rulings were correct.

V. A witness was asked to state the market value of the land as it would have been if as represented, describing it as "where no water could get to the land, 5. SAME: evidence of value. except that it would fall on it." Counsel insist that there was no evidence tending to show that it was so represented. The language was not employed, but saying water did not run thereon from the surrounding tracts was equivalent to so representing.

VI. Haugen was permitted to testify, over objection, that it was not possible to drain all the land toward the Marsh River north and northeast. This was error, as he 6. DRAINAGE: non-expert evidence. was not shown to be an expert. But his subsequent examination indicated that he meant no more than that the natural drainage of part of the west section was not in that direction, so that the error was without prejudice.

VII. The court permitted defendant to explain what

he meant by certain answers made on cross-examination, especially whether he intended to modify or contradict any of his testimony in chief.

7. EXAMINATION
OF WITNESSES:
discretion.

The ruling was discretionary, and an examination of the record indicates that the court's discretion was not abused.

VIII.   Exception was taken to the court's refusal to give the third instruction requested.   It was correct in the abstract; but, as the record contained no evidence tending to show that defendant's means of knowledge were equal to those of plaintiff, it was properly refused.

8. INSTRUCTIONS:
refusal.

Complaint is made of the sixth instruction given, advising the jury that "if the condition of the land, in any respect, concerning which representations were made by the plaintiff to defendant, was readily discoverable, or plainly perceptible to the defendant by the use of his senses and his judgment, then he must be deemed to have known what was plainly perceptible to him, and he can not be deemed to have relied on representations, the falsity of which he ought to have known under the rule herein stated.   In determining the question whether the defendant is chargeable with knowledge of the condition, quality or topography of the land in question by his view thereof, you have a right to take into consideration all the circumstances surrounding him at the time thereof and the statements, if any, made to him by the plaintiff at the time."   It is said the wrong test was applied, in that defendant should have been held to have known what he could have ascertained by the exercise of ordinary care and diligence, instead of that which might have been discoverable or was perceptible by the use of his senses and judgment.   The fact that one does not procure the information which ordinary prudence would dictate will not defeat recovery, where, not-

9. FRAUD: failure
to procure
information.

withstanding this, he relies on the seller's misrepresentations.

The seventh instruction is excepted to on the ground, among others, that, as is said, there is no relation of trust which will justify reliance upon representations without investigation, save where one party is under the power of the other. If so, this statement is not inconsistent with the instruction, for if one clothes himself in the character of a confidential advisor, and, because of this, confidence is reposed in him to such an extent that the other is influenced thereby, he is exercising an influence or power over him.

10. FRAUD: confidential communications.

IX. The verdict was for $7,199.70, and in answer to a special interrogatory returned in court the jury stated that defendant had been allowed the same amount in damages; but the court had instructed that, in event the damages awarded exceeded $1,500, the face of the note sued on, the verdict should be for the difference between that sum and the amount of damages so awarded, and, upon the return of the verdict and answer as above, counsel agreed, in the presence of the court, not in the hearing of the jury, that the jury should not be sent back, and that the court might make the deduction of the face of the note. The record discloses that thereupon the court said: "Gentlemen of the jury, you will now be discharged from further consideration of this case. I may say to you that, for the purpose of your general verdict, you ought to have deducted the $1,500 represented by plaintiff's note from the amount of damages allowed by you to the defendant; but counsel have agreed that such deduction may be made by the court, and your services therefore will no longer be necessary." Within a few moments, and before any juror had left the box, the foreman of the jury addressed the court as follows: Foreman: "Your honor, we did deduct the $1,500.

11. VERDICT: special finding: correction: discharge of jury.

Court: It does not so appear from your general verdict and special finding. Foreman: Well, your honor, that is what we intended. We fixed the value of the land at $24 per acre, and defendant's damages at $6 per acre. We deducted the $1,500, and added interest to the balance at 6 percent as you told us to do." To these statements of the foreman the other jurors assented, and none dissented; but no formal poll of the jury was made nor requested. Thereupon defendant's counsel asked that the jury be sent back to their jury room to correct their special finding. To this plaintiff's counsel objected, and insisted that the jury had been discharged by agreement of counsel, and that the court had no further power to send them back. The court made no further order at the time, and the jury dispersed.

It will be noted that counsel agreed to a change in the verdict by deducting therefrom the face value of the note, but not the correction of the answer to the special interrogatory by increasing it by that sum, so that it correspond with the statement of the jury's foreman. The defendant asked that he be relieved from such agreement, and that the special verdict be corrected, so that the amount of damages as shown in the answer be increased by the face value of the note, making it $8,947.50, and this was supported by the affidavits of all the jurors that the damages had been fixed at this amount. To this plaintiff objected, for that the court was without authority to alter the verdict, and defendant was bound by the agreement mentioned. No argument is required to demonstrate the fallacy of the last objection. Even though a deduction from the verdict had been agreed upon, this appeared from proceedings immediately following to have been based on the erroneous supposition that the mistake was in the verdict, rather than the answer to the special interrogatory, and, as nothing had been done in pursuance of the arrangement, the court rightly allowed defendant to recede there-

from. The special interrogatory was submitted by the court without request from either party. The moment the jury's attention was directed to the discrepancy between the answer thereto, and the general verdict, the foreman promptly explained that a mistake had been made, and that the answer was not in accord with the finding of the jury. This was concurred in by the entire panel. All this happened before the jury had been discharged. True, the court had said their services were no longer required, but they had not separated. Their repudiation of the answer was timely. If further answer was desired, or that made was to be corrected, the jury should have been allowed to return another answer or correct that returned; but the plaintiff objected to this and can not now be heard to complain because his objections were in effect sustained.

Some other rulings are complained of, but an examination of them has led to their approval.—*Affirmed.*

DEEMER, J. (concurring).—While agreeing to the conclusion, I can not, in view of our decisions in *Van Veahten v. Smith,* 59 Iowa, 173; *Lucas v. Crippen,* 76 Iowa, 507, and other like cases agree to the arguments used in support thereof, and because of the peculiar facts disclosed by the record I agree to the result reached in the last paragraph without being committed to the reasons given for the holding.