MARIAN J. HARRIS, Appellee, v. POLK COUNTY INVESTMENT COMPANY, Appellant.

**PRINCIPAL AND AGENT: Fraud by Agent of Corporation.** A corporation which concedes that, in the making of a land sale contract, it was represented by a named person, may not say that such person had no authority to make representations in regard to the land.

**FRAUD: Examination Excluding Reliance on Representations.** An examination of property prior to purchase does not necessarily exclude reliance or right to rely on representations relative to the property. Such issue is ordinarily for the jury. So held as to representations as to the tillability and nonoverflow nature of the land.

*Appeal from Polk District Court.*—GEORGE A. WILSON, Judge.

MAY 11, 1920.

ACTION to recover damages based on alleged false representations made in the exchange of lands.—*Affirmed.*

*Brammer, Lehmann & Seevers,* for appellant.

*McHenry & Powers,* for appellee.

GAYNOR, J.—This action is brought to recover damages for false representations, alleged to have been made by the defendant to the plaintiff in effecting a trade of real estate.

The trade is alleged to have taken place on

1. PRINCIPAL AND AGENT: fraud by agent of corporation.

or about the 20th day of May, 1918. At that time, the plaintiff was the owner of certain real estate, and the defendant was the owner of certain other real estate. A trade was effected between them, by which the title to plaintiff's property passed to the defendant, and the title to defendant's property passed to the plaintiff. The terms under which the exchange was made, were agreed upon, and the deal consummated. The plaintiff claims that, to induce her to make the exchange, and to transfer her property to the defendant, the defendant falsely represented that the land which she received in the exchange was tillable land, and that the same *never overflowed;* that, as a matter of fact, it was not tillable land, and that it *overflowed* nearly every season; that this representation was made to induce the trade; that it was false; that the defendant knew it was false; *that plaintiff did not* know it was false, relied upon it as true, and made the exchange; that the property received by her was not worth as much as it would have been if it had been as represented; that, because of its overflowing frequently, its value is less than it would have been, had it been as represented. Plaintiff claims she is damaged by these false representations in the sum of $1,500.

It is not necessary, for the purposes of this case, to set out the description of the several tracts of land. It appears that the negotiations for the exchange were started by one Newton, who claimed to represent the defendant, and who claimed to have the right to represent the defendant in bringing about the exchange. Whether he represented the defendant or not, in the view we take of this case, is immaterial. The deal was finally consummated and the exchange made through one Frost. It appears that, before the exchange was made, the plaintiff visited the land, in company with Newton, and we assume that Newton made the state-

ments which plaintiff claims were made by him to induce her to make the contract. We may assume, without deciding, that Newton had no authority to make these representations, and we may assume, without deciding, that they were not binding upon defendant, because of the want of authority in Newton to make them. We may assume, without deciding, that these representations were not within the scope of the authority of Newton to make, and we may assume, without deciding, that, if the defendant knew nothing of these representations, was not a party to the fraud and deceit practiced by Newton, it is not bound by his fraud. Such assumption, it is claimed, is in line with the holding made in *Ellison v. Stockton*, 185 Iowa 979, and would follow, though Newton was employed by defendant to find a purchaser. But the record shows that the defendant is a corporation. The answer of the defendant admits that, on the 20th day of May, 1918, a trade was made between the plaintiff and the defendant, and that the defendant in the trade was represented by Frost; that, in this trade, plaintiff's land was transferred to the defendant, and defendant's land transferred to the plaintiff. The evidence shows that, before this trade was consummated, Newton and the plaintiff visited defendant's land, and, while on the land, Newton was asked whether or not the land overflowed, and he informed plaintiff, in positive terms, that it did not. The fact is that it did overflow, and had overflowed frequently during the past. Newton, however, asserted it to be a fact, of his own knowledge, that it did not, in fact, overflow. There was evidence of a creek there, or a run; but it was dry, at the time the plaintiff visited it, and this may have prompted the question. But, however that may be, after this visit, and after Newton had made this assertion touching the character of the land, the record shows that the plaintiff called on Frost. Some controversy arose as to some details in the transaction between her and Frost. Frost told her that Newton had no

authority in the matter, except to *show* the property. He said, "If you make a deal, you will make it with me, as agent of the Polk County Investment Company."

The plaintiff testified that, before the deal was consummated, she talked with Frost. She says:

"Before I signed the papers, I asked him [Frost] if everything Mr. Newton had represented to me was true, and Frost said 'Yes. You are perfectly safe. I am perfectly responsible for any deal that is made.' I signed the papers, and left his office. We talked about the land out there and the price and everything. I wanted to go over and see my attorney, before I signed the papers. Frost said it was not necessary, because he was perfectly responsible for the deal. He said, 'I am head of the company, and will stand back of anything I do.' I explained to him how Newton had taken me out and shown me the property, and told him all that Newton had said; that Newton told me the property was a good place for a building site, that it was a valuable piece of property, and would make a nice home for us, that it *did not overflow*. I explained to him what Newton had said. Mr. Frost said *'It is all right.'* Thereupon, the papers were executed."

It is the contention of the defendant that neither Frost nor Newton is shown to have had authority from the company to bind the company by any false representations; that they were merely agents of the company, and that their agency was not of such a character as to include the right to make these false representations, and bind the company; that the defendant was an innocent vendor, practiced no fraud, and cannot be held responsible for the fraud of its agents, unless it is shown that the agents were authorized by the defendant to make the false representations, or that it subsequently ratified the false representations, with knowledge that they were made, and with knowledge that plaintiff was relying upon them in making the deal. How it

can be claimed that Frost was the mere agent of this com-
pany, with no authority to bind the company, in the face of
this record, we are not able to see. If the *company* made
false representations, it is bound. If, before the deal was
consummated, the company knew that these false represen-
tations were made, and that the plaintiff was relying upon
them, and re-affirmed and re-asserted the representations as
true, it made the representations its own, and it became the
falsifier, and responsible for the fraud. The record shows
that, before the deal was finally consummated, Frost was
fully informed of what Newton had said, touching this prop-
erty, and assured plaintiff that the facts were as Newton
stated them. If Frost represented the company, then it was
an assurance by the company itself. It is claimed that there
**is no evidence that Frost was other than an ordinary agent**
of the company; but the answer itself concedes that, in mak-
ing the trade, it was represented by Frost. This answer is,
therefore, an admission that this trade with the plaintiff was
made by defendant, acting through Frost; that Frost acted
for the defendant, at the time the trade was consummated,
and, so acting, re-asserted that the facts stated by Newton
were true. It was for the jury to say whether or not Newton
made these representations. He denies that he did. It was
for the jury to say whether Frost re-affirmed these state-
ments, if made by Newton, after knowledge that Newton
had made them; whether the re-affirmation as to these state-
ments was made before the deal was consummated; whether
the plaintiff relied upon the representations in making the
trade; and whether or not the defendant knew that the rep-
resentations were false. The defendant is a corporation.
It can act only through its "representatives." They are its
eyes, its ears, its feet. All that it does, all that it says, all
that it thinks, must be done through representatives; and it
concedes that Frost was its representative in the trans-
action,—as it were, its *alter ego*. It appears that Frost

acted for the defendant in consummating the deal, in preparing and exchanging papers, and in performing for the defendant the conditions of the contract. In fact, every act that the defendant could have done to consummate the contract was done through the instrumentality of Frost. The case could hardly be stronger than it is, if Frost were the defendant in the suit. We think there was no ground for a holding on the part of the court that the representations charged to have been made, shown to be false, and material to the trade, were not made by the defendant itself.

This brings us to the consideration of the other branch of the case.

It is urged that, because the plaintiff visited the land before the deal was consummated, had an opportunity of seeing the land, and judging for herself whether it was good, fillable land, or whether it overflowed, she **2. FRAUD: examination excluding reliance on representations.** cannot now be heard to say that she was deceived by these fraudulent representations, or that she relied upon them. Whether a purchaser is deceived or not is ordinarily a question of fact for the jury. No general rule can be laid down that is applicable to all cases. It is true the record shows that plaintiff saw and knew that there was a run through this portion of this land, but it also shows that this run was dry, at the time she was there; that she passed over it without wetting her feet. She saw the run, or the bed of the stream, as we may call it, but she had no previous knowledge of the action of the water in this stream. It is true she said that she knew something about the streams in Iowa, and knew that streams did overflow. But whether streams overflow or not, even in Iowa, depends largely upon the topography of the country, the quantity of water that accumulates at any particular point, and its levels. She is not shown to have made any observations on these points, or to have had any information. The defendant positively assured her that it did not

overflow. It is now saying that she had no right to rely upon these positive assertions made by the defendant. It is a fraud to assert a fact to be true which the party making the assertion has no reasonable ground for believing is true, or which he knows to be false, at the time he makes it. We are inclined to think that the evidence here would justify the jury in saying that the defendant knew this representation was false, at the time it was made, and, therefore, the *scienter* was supplied which is essential to a charge of fraud. This woman was a boarding house keeper. It is true she had dealt somewhat in lands, but there is no evidence that she had dealt extensively, or that she had any expert knowledge touching the matter about which she inquired, nor does the record show that a view of the premises would convey a knowledge to her which would negative her right to rely upon the positive statement of the defendant. The facts in no two cases decided by this court are exactly alike. Nothing but general principles can be laid down, to guide in determining whether or not an opportunity to view is equivalent to knowledge of conditions which might be known from a view. As holding that it is ordinarily a question for the jury, see *Boddy v. Henry*, 126 Iowa 31, and cases therein cited. For a discussion somewhat of the question here involved, see *Bell v. Byerson & Barlow*, 11 Iowa 233; *Moore v. Howe*, 115 Iowa 62; *Shuttlefield v. Neil*, 163 Iowa 470. These cases simply hold that, where the defect is open, and as obvious to the buyer as it was to the seller, there can be no recovery for false representations. This is the general rule, but it still remains a question for the jury to say whether, in any particular case, the matter concerning which the false representations were made, was as open and obvious to the buyer as it was to the seller, and whether or not it was made falsely, for the purpose of inducing a sale, which a knowledge of the truth would have prevented. See, also, as bearing upon the question of whether the plaintiff

is estopped by a view from asserting that she was deceived by the false representations, *Hale v. Philbrick,* 42 Iowa 81; *Carmichael v. Vandebur & Hopkins,* 50 Iowa 651; *McGibbons v. Wilder,* 78 Iowa 531; *Brett v. Van Auken,* 99 Iowa 553; *Hetland v. Bilstad,* 140 Iowa 411; *Fulton v. Fisher,* 151 Iowa 429; *Van Vliet Fletcher Auto Co. v. Crowell,* 171 Iowa 64; *Franke v. Kelsheimer,* 180 Iowa 251. We think it was a fair question for the jury whether, under all the circumstances, the plaintiff had a right to rely upon the representations made, on the falsity of which she predicates her right to damages.

It is next contended that the verdict is excessive. It is not so excessive as to indicate passion or prejudice. There is evidence to support the verdict. The amount of plaintiff's damages was a fact to be ascertained by the jury, under proper instructions. The amount allowed is not such as indicates passion or prejudice. We do not feel that we can reverse the case upon this ground.

Upon the whole record, we think the case ought to be, and it is,—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.