De Rose *v.* Fay and others.

Where a client complains that his solicitor, while acting as such, has fraud-
ulently obtained from him a judgment and money thereunder, for unjust
fees and charges, the *onus* is thrown upon the solicitor to prove considera-
tion for each and every item.

A solicitor, acting for several clients in a matter, must not, *pendente lite*, get
one of them to give him security upon that one's estate or rights, for the
fees coming to him from another of the clients: unless where the effect
and extent of the liability are most distinctly explained.

An accumulation of costs, arising from a solicitor's spreading litigation by
a second suit, while the first is pending, and might, by an amendment
or otherwise, be made sufficient, will be disallowed; and, if paid, must be
refunded. The client's consenting to the proceedings, by signature and
oath, to the pleading involved, does not debar him from questioning its
propriety.

A solicitor, while acting as such, should not encourage or allow a client to
sign a petition to be presented to the court beneficial to the former.

*April* 11*th*, 1842.   THIS case now came before the court on the master's
report, and testimony taken before him on the complainant's
petition against her solicitor. The decision of the Vice-
Chancellor will be found to embrace the facts fully.

*Solicitor
and client.
Profes-
sional con-
fidence.
Costs.*

Mr. *W. Silliman*, for the petitioner, Ann Fay.

Mr. *Jonathan Miller*, for the solicitor.

*Dec.* 13.   THE VICE-CHANCELLOR :—The object of this proceeding
on the part of Ann Fay, against her late solicitor, is to com-
pel him to refund or pay over moneys to her which he has
received under the decree and orders of the court made in
this cause. The suit was for a sale, in partition, of certain
real estate in which Mrs. Fay was interested, to the extent
of eight eighteenth parts; Susan Ann De Rose, the widow
of Anthony L. De Rose and her three infant children, were
interested in five eighteenths, and Matilda De Rose, the
widow of John P. De Rose and her infant child, were owners
of the remaining five eighteenth parts.

The bill was filed on the tenth day of August, one thousand eight hundred and thirty-six; and, on the seventeenth day of April, one thousand eight hundred and thirty-nine, a final decree was made in the cause, under which the property was sold for fourteen thousand dollars. Pending the suit, and on the third day of July, one thousand eight hundred and thirty-eight, W. S. S. procured a judgment to be entered up of record against his client Mrs. Fay, and against Mrs. Matilda De Rose, by virtue of a warrant of attorney and their joint bond made to him for the payment of two hundred and twenty dollars and twenty-seven cents, with interest. On the twenty-fourth day of November, one thousand eight hundred and thirty-eight, he procured another judgment to be entered up, in like manner, against his client, Mrs. Fay, by virtue of another bond and warrant of attorney for the sum of two hundred and fifty-seven dollars with interest.

On the reference in the partition suit to ascertain liens, these judgments were presented by Mr. S., and the same were reported by the master : the first, as a lien on Mrs. Fay's and Matilda De Rose's share of the estate, and the other on Mrs. Fay's share alone; the amounts, for principal and interest, computed to the date of his report, were decreed to be paid with additional interest to the time of payment; and they were paid exclusively and entirely out of the eight-eighteenths of the proceeds of sale to which Mrs. Fay was entitled or in which she was interested. She now states in her petition that she was not indebted to the said W. S. S. in any such amounts; and never, knowingly or intentionally, executed such bonds and warrants of attorney; and that the same must have been procured from her by fraud and misrepresentation. But she admits that she once borrowed fifty dollars of him, and also that, at the same time, her sister-in-law, Matilda De Rose, borrowed a like sum; and that they gave their joint notes for the two accounts; and, likewise, that she afterwards borrowed money of him, at different times, to the amount of about fifteen dollars. Also that she recollects he once asked her to sign a paper which he informed her was to secure the one hundred dollars and some part of the fifteen dollars; and that these were the only

papers he ever requested her to sign in regard to money lent or money due to him on any account whatever. On these allegations, I deemed it proper to refer the subject to a master, to take proof of the consideration of the two judgments; and, under the circumstances of relationship in which the parties stood to each other, viz., that of solicitor and client, I considered that sound policy required Mr. S. to prove the consideration of the indebtedness, notwithstanding the existence of the bonds and judgments.(*a*) The order accordingly cast the burthen of proof upon him, requiring him to adduce evidence before the master of the consideration and of the particular items of account or indebtedness on which the judgments were and each of them was founded.

The subject has undergone an investigation before the master, who has taken and reported the evidence; and the whole case has been argued before me and awaits a decision. The testimony of Mr. Millspaugh shows the consideration of the two bonds and judgments. The consideration of the first was made up of the following items:

1836, June 16.   To services getting the corporation
                 to take the mortgages,              $ 50.00
                 To money lent to Mrs. Fay and
                 Mrs. De Rose,                         100.00
                 To interest thereon,                   7.77
                 To expenses going to Albany on
                 business, per Mr. Magill,             37.50
                 To charges on Day Book,               25.00
                                                     _____
                                                     $220.27

It is proved, in support of the item of fifty dollars, that Mr. S. was instrumental in procuring the corporation of the city of New York to take an assignment of two mortgages upon the property from the receivers of the Globe Insurance Company, an insolvent institution, so as to prevent an immediate foreclosure; and that, on objections being raised by the counsel of the corporation to their taking the mortgages and advancing the money, Mr. S. succeeded, by furnishing explanations to the counsel, in removing his objections;

(*a*) See *Lewis* v. *Morgan*, 3 Y. & J. 230.

and it is further proved that fifty dollars was a reasonable compensation for the trouble and pains he took on that occasion, and that even more might be charged, if getting the matter through was an important service to his clients.   But who the clients were in that business, or who retained the solicitor, or at whose instance he undertook the matter, no where appears.   John P. De Rose, the husband of Matilda, was then living.   Mr. S. held a mortgage for two thousand dollars on his undivided share of the estate.   The widow and children of Anthony L. De Rose were also interested, as tenants in common ; and if it was for the benefit of one, it was for the benefit of all the owners that this service was performed.   As the result has shown, however, it was a disservice : for, if the mortgages had been foreclosed and the property sold in the year one thousand eight hundred and thirty-six, as it would have been if the corporation had not been prevailed upon to take the assignments, it would have made a difference to the owners of from eight to ten thousand dollars in the price, and there would have been a saving of about one thousand dollars besides in the costs and expenses of the proceedings to obtain a sale.   It is difficult to imagine a sufficient reason for not leaving the receivers of the Insurance Company to proceed and foreclose the mortgages, instead of procuring a transfer of them to the city corporation ; unless, from an anxiety, somewhere, to make more out of it in the way of costs of a partition suit than could be made by a foreclosure and an adjustment of the rights of parties to the surplus when the same should be brought into court.   The owners were all desirous, at that time, of having a sale, for the sake of a partition and settlement among themselves; and the bill in this cause was filed as soon thereafter as it could be prepared.   Still, the fifty dollars worth of service, as it was deemed to be at the time, has been performed; but, I think Mr. S. had no right to charge the whole of that sum to only two of the owners, much less to take pay of the whole out of Mrs. Fay's share of the property, as the sequel has shown was done.

The proportion of the fifty dollars to be borne by Mrs. Fay, according to her eight-eighteenths of the estate, was twenty-two dollars and twenty-two cents, which is all

that Mr. S. could, fairly, exact from her. True, she and Matilda De Rose assumed to pay the whole of it, by giving their joint bond and a confession of judgment, but, at that time, they were his clients or, at least, Mrs. Fay was; she had confided to him the care and protection of her rights in the very property he was thereby seeking to obtain a lien upon for his own benefit. Standing in that confidential relationship, he had no right to ask her to assume the payment of any more money to him than she had originally contracted to pay or was in strict justice and equity liable for. Although she may have readily consented to assume the liability and, to all appearances, have freely executed the securities, knowing that the object was to charge or encumber her estate for the benefit of her solicitor, yet, the law, from motives of the wisest policy, will not allow him to hold an advantage thus acquired. As her solicitor, he was bound to advise her against any acts she might be disposed to do which were detrimental to her own interests: *Sir Watkin Lewis* v. *Morgan*, 3 Anst. 774; *Lewes* v. *Morgan*, 5 Price 42; *Gibson* v. *Jayes*, 6 Ves. 266, 278, 280; and hence, he could not, with reason or propriety, accept from her securities which were to have that effect. Upon principles of public policy, all dealings between solicitor and client are to be anxiously scrutinized in equity, in order to protect the client from the consequences of his own acts done under the influence or ascendency which the former is supposed to acquire over the latter: *Bellew* v. *Russel*, 1 Ball & Beatty, 107. A purchase of the thing in litigation, of which litigation the attorney has the management, will be set aside; and securities obtained *pendente lite*, agreements for *extra* reward, and gifts made by the client to the attorney, during the time when the attorney has in hand the transacting of the client's affairs, will be annulled, even without proof of actual fraud: *Welles* v. *Middleton*, 1 Cox, 112; *Montesquieu* v. *Sandys*, 18 Ves. 312. Settled accounts will be looked into and opened; and the court will take care to see, in every case of dealing between solicitor and client, that no sort of disadvantage has resulted to the client, at the same time that full justice is done to the solicitor. The books are full of cases of every possible variety where this principle is recog-

nized, (see Merrifield's Law of Attornies, ch. VII. for a refer-   
ence to them.)

Keeping this great principle in view, I shall proceed to the other items which form the consideration of the first mentioned judgment. One hundred dollars of it is for money lent, and some interest thereon. This money was lent in two distinct sums, fifty dollars to Mrs. Fay, and fifty dollars to Mrs. De Rose. Mr. S. has adduced no evidence to show, (independent of the fact of their making a joint note) that these loans were made upon any original understanding that the borrowers were to become sureties for each other's respective loan. Their joining in the note, in the first instance and afterwards in the bond, may have been a matter of convenience to avoid multiplying the evidences of debt; and it is not such an assumption or obligation as, under the circumstances, gives to the solicitor a right to take payment of the whole out of the individual property of Mrs. Fay, which was then in a suit under his charge. It matters not that she seemed willing to sign the papers when prepared and presented to her without actual fraud or misrepresentation on his part. He was bound to apprise her distinctly of the legal effect of the papers, and of the extent of the liability she was subjecting herself and property to by signing them; and he should be prepared to prove that he did so; or else, he should not have asked her to make herself liable to him for any thing more than his actual advances for her benefit. Standing in the relation of solicitor, I think he had no right to impose upon her, for his own benefit, a voluntary suretyship for another, even with her own consent. Fifty dollars of the money, therefore, which was lent to Mrs. De Rose, with the interest thereon which he has received, must be refunded to Mrs. Fay. The item of thirty-seven dollars and fifty cents, expenses incurred for William Magill, stands upon the same footing. Mrs. Fay had nothing to do with this. Magill was the son of Mrs. De Rose; and she alone was responsible for the payment of that money. And so far as Mrs. Fay's money has been applied to that object, it must be refunded by Mr. S., with interest.

As respects the charges on day-book, amounting to twenty-five dollars, no evidence has been given what they were for.

The solicitor was bound to prove those charges *aliunde*. He has not done so; but, since Mrs. Fay has stated, in her petition, that she borrowed some small sums at different times to the amount of about fifteen dollars, it may be a fair inference that they constitute a part of the day-book charges, and to the extent of fifteen dollars, of the twenty-five dollars, Mr. S. may be allowed to keep what he has received; but the remaining ten dollars he must refund.

I now come to the second judgment, obtained by Mr. S. against Mrs. Fay solely on the twenty-fourth day of November, one thousand eight hundred and thirty-eight, and on which was reported to be due by the master, as a lien on her share of the estate, the sum of two hundred and seventy-one dollars and twenty-five cents. This was entered up by confession on a bond and warrant of attorney. It appears that, after the bill was filed by Susan Ann De Rose in the present suit and while the same was pending, Mr. S. filed a bill before the chancellor, in behalf of Mrs. Fay, as a complainant, for the same object. To that bill, a plea of the former suit pending for the same cause was interposed; and which plea was allowed by the chancellor, and the bill was dismissed with costs. For the defendant's costs therein, an execution issued; and Mrs. Fay's right and interest in the property in question was sold by the sheriff and purchased by Mr. Lansing, but was afterwards, by consent of the purchaser, redeemed out of the proceeds of the sale under the decree in this cause. For Mr. S.'s costs and counsel fees in such suit a bond and warrant were given to him by his client; and on which the last mentioned judgment was entered up. The items constituting the two hundred and fifty-seven dollars, for which the bond and warrant of attorney were given, have not been laid before me. They were contained in a statement produced before the master, and marked exhibit No. 4, but which exhibit has either been mislaid or was withdrawn from the master's office; and has not been produced on the hearing. It is understood, however, to have contained a charge of one hundred dollars for a counsel fee, in addition to taxable costs of the suit, (but it does not appear that the costs have ever been taxed) and a charge of fifteen dollars for services out of the suit in looking after some rents

of the property. The good faith of Mr. S., in filing the bill for Mrs. Fay, and thereby subjecting her to so heavy an expense, is brought in question. He attempts to justify the measure, on the ground that the bill filed by Susan Ann De Rose was defective or imperfect in some respects or became so by the death of one of the parties, and that the solicitor delayed proceedings; and that, according to the latter branch of the decision in *Matthews v. Matthews,* 1 Edwards's V. C. R. 565, the bill was too hastily and prematurely filed, and a decree for a sale could not be made upon it. It is also said, that, in allowing the plea to the second bill, the chancellor was obliged to overrule the decision of *Matthews* v. *Matthews* on that point. The answer to all this is, that any defect in or imperfection about the first bill could form no ground for filing a second bill for the same object, while the first was still pending : because the defects could be cured by amendment, and the imperfection arising from the death of a party could be, and was, in fact, removed by a revivor ; and there was, at no time, such a delay in the prosecution as amounted to an abandonment of the suit. And, as to the filing of the bill by Susan Ann De Rose, so soon after the death of Anthony L. De Rose her husband (from whom she derived title as devisee under his will) as not to allow time for a proceeding to be had before the surrogate for a sale for payment of his debts, it being suggested in the answer of Mrs. Fay that there were debts of Anthony L. De Rose, which his personal estate was insufficient to pay, in which respects the case was similar to that of *Matthews* v. *Matthews,* but, in the case referred to, it was not decided that a tenant in common had no right to file a bill immediately after the death of the ancestor or within the three years, and for that reason that his bill should be dismissed as prematurely filed. The decision there made goes no further than this : that, upon such facts, the court would not proceed to decree an immediate sale and distribution of the proceeds, but would retain the suit in court, with leave to the complainant to move in it at a future day, when it could be seen that a sale could be made with due regard to the rights of creditors. This conclusion and the denial of the party's right to file a bill, and its consequent dismissal, are very

different things, and the case of *Matthews* v. *Matthews* could have furnished no sufficient ground for the supposition that Susan Ann De Rose's bill would be dismissed, merely because it was filed within a few months after the death of her husband and while his simple contract debts were left unprovided for.

Again : even if *Matthews* v. *Matthews* could be considered as going against her entire right to file a bill under such circumstances, it would form no justification or excuse for filing another bill for the same object, so long as the first remained undisposed of. The plea of the other suit pending would be equally fatal to the second, although the first might be untenable and would be dismissed at the hearing. In support of such a plea, the court has only to ascertain the fact of the pendency of the suit pleaded, and not whether it is properly brought or will probably be defeated or dismissed.

For this reason alone the chancellor might well allow the plea to be a good bar, without disturbing the decision in *Matthews* v. *Matthews*. If the solicitor really supposed the bill of Susan Ann De Rose would be dismissed, as being prematurely or irregularly or improperly filed, he should have waited until he could bring about such a result; but, to file another bill in behalf of his client for the same object, with a full knowledge of the pendency of the first and without any reason to suppose that its prosecution was intended to be dropped or abandoned, betrays either gross ignorance of principles of law and the practice of the courts, or an inordinate desire to involve the estate or the client in unnecessary litigation and expense, by which the solicitor might profit. In every such case, it is the duty of the court to interpose and protect the client from the consequences of such misconduct. In *Wood* v. *Wood*, 4 Russ. 558, a petition imputed various acts of misconduct to a solicitor who had had the conduct of the suit ; one charge against him was, that he abandoned a suit which was depending, and unnecessarily instituted a second suit, though every useful purpose might have been accomplished by means of the first suit, or, at least, much expense might have been saved by adopting the proceedings in it. The Lord Chancellor said :

"If a suit is depending and is prosecuted up to a certain point, and the solicitor improperly abandons that suit, and unnecessarily institutes a new suit, the court will take care that the client shall not suffer by the adoption of such a course of proceeding." In *Piggott* v. *Williams*, 6 Mad. R. 95, a solicitor filed a bill for foreclosure of an estate pledged to him as a security for costs. The client filed a cross bill, alleging that the costs, for which the security had been given, would have been avoided if the solicitor had conducted himself with integrity, skill and attention, and praying a surrender of the security. To this bill, the solicitor demurred: on the ground, that the claim of the client for negligence or want of skill could only be tried in an action at law. The court overruled the demurrer, declaring that the client had a clear title to restrain the solicitor from proceeding to enforce the security while the demand for damages remained unsatisfied, and that such damages, when ascertained, could be made a matter of equitable set-off. These cases are sufficient to show the nature and extent of the authority which this court of chancery will exercise in cases of this sort. Although Mrs. Fay may have assented to the filing of the second bill, and subscribed and sworn to it, she is not thereby precluded from calling in question the motives and conduct of her solicitor. It appears, from some parts of the testimony, that he encouraged and strongly advised her to allow him to file such bill as being necessary to the establishment of her rights. And, in authorizing it, she was doubtless governed entirely by his advice. Nor do I consider that she is prevented from questioning the fairness of the consideration and validity of the judgment by the seeming freedom with which she executed the bond and warrant of attorney when requested to do so. The request came from the solicitor while she happened to be in his office. A short statement or account of the amount of costs and fees was shown to her; and she expressed a willingness to execute such papers as might be prepared. His clerk made out a bond and warrant of attorney, which she signed immediately on the spot and before leaving the solicitor's office, and without taking time to reflect or advise with any other person on the subject. Such a ready acquiescence in the solicitor's

1842.

DE ROSE
v.
FAY.

demand shows a pervading influence which calls for the interference of the court to protect her from the consequences of her act, where it appears that the demand was far from being a meritorious and a just one : for, I am constrained to say, that I think the costs and counsel fees of that attempt to carry on a second partition suit, pending the one which had already been commenced and was then in progress, could not have been recovered against her by any compulsory or hostile proceeding; and, consequently, that she is entitled to have the money refunded, with interest. Fifteen dollars for other services, which was included in the bond and judgment, may have been a meritorious demand; and this the solicitor may be allowed to retain.

I come now to another and more important branch of this case. The decree made in the cause had provided that, after paying the costs of the suit and discharging the incumbrances upon the whole estate, and satisfying some general and specific liens upon the undivided eight eighteenths in which Mrs. Fay was interested, the residue of that share of the proceeds of sale should be brought into court to abide its further order. It having been determined, by the decree, that Mrs. Fay's eight eighteenths of the estate, although purporting to be a fee, was liable to be defeated by the limitation over in the will, under which the title was held in the event of her dying without issue living at the time of her death, and which was good by way of executory devise to pass the eight eighteenths to her brothers, Anthony L. and John P. De Rose, and their heirs; and as Mrs. Fay was a widow without children, and the event was likely to happen by which the fee was to vest in others, her interest was put on the footing of a life estate, with remainder to the infant children of the two deceased brothers. After making the payments and division of the proceeds, as directed by the decree, the balance of that share to be brought in, as stated by the master, was two thousand four hundred and nineteen dollars and forty-eight cents. But, it was found that there was a deficiency of nineteen hundred and eight dollars and thirty-three cents on the mortgage-debt of four thousand two hundred and seventy-five dollars and two cents, by virtue of the second mortgage held by the corporation of the

city of New York, after applying the whole nett share (five eighteenths) which had belonged to Anthony L. De Rose, and three hundred and eighty eight dollars and sixty-seven cents out of the other five eighteenths which had belonged to John P. De Rose. And to make good that deficiency, Mrs. Fay's share and the balance of the share belonging to the widow and children of John P. De Rose were liable, they, (Mrs. Fay, and John P. De Rose and wife) haviug joined in that mortgage with Anthony L. De Rose and wife, Mrs. Fay, however, merely as a surety, she having received no part of the mortgage money, and John P. De Rose as a principal in it to the amount of the three hundred and eighty-eight dollars and sixty-seven cents, and beyond that also he stood as a surety for Anthony L. De Rose. The nett amount of the share of John P. De Rose in the estate, after paying out the three hundred and eighty-eight dollars and sixty-seven cents to the corporation, was one thousand five hundred and eighty-nine dollars and thirty-four cents. This balance was covered and would be entirely absorbed by another mortgage on that share of the estate which had been executed by John P. De Rose and wife in his life time to Mr. S.; and which the latter had, nominally, assigned to Mr, Millspaugh, but of which Mr. S. was still the owner in fact, and on which mortgage there was due upwards of two thousand three hundred dollars. If the remaining one thousand five hundred and eighty-nine dollars of the John P. De Rose's share or any part of it should be taken to make up the deficiency to the corporation of the Anthony L. De Rose mortgage debt, then, Mr. S. would be a very considerable loser of his mortgage debt; but, if the money which was to be paid into court, in which Mrs. Fay was interested, could be taken and applied to the payment of the corporation, then, the fund applicable to Mr. S's. mortgage, would be relieved from the prior incumbrance and he would be benefited, at least, to the extent of that relief. A petition was, therefore, prepared and presented by Mr. S., as solicitor for Mrs. Fay, (signed and verified by her in the usual manner after she had heard it read) stating her willingness and consent that the balance or deficiency due to the corporation of the Anthony L. De Rose mortgage debt should be de-

ducted and paid out of her share and interest in the proceeds in the hands of the master; and that she was willing to take a sum in gross for her interest in the balance which would remain of the fund, after payment of such deficiency to the corporation ; and praying an order accordingly.   An order was made accordingly upon this petition on the twenty-third day of June, one thousand eight hundred and forty ; and under and by virtue of which the master went on and paid the deficiency to the corporation out of the eight eighteenth share of the proceeds, and computed the gross value of Mrs. Fay's interest, as a life estate in the balance, at three hundred and twenty-eight dollars and thirteen cents, which he paid over to her and she accepted and, thereupon, executed a release as to the residue of the fund.   This residue, being only one hundred and eighty-two dollars and two cents, the master paid into court for the benefit of the infant children of Anthony L. De Rose and John P. De Rose, as the persons entitled in remainder to that share of the estate.

The effect of that petition and order was directly to benefit Mr. S.   He was, thereby, enabled to receive all that remained of the John P. De Rose share on account of his mortgage.   He and Mrs. Fay stood in the character of co-sureties for Anthony L. De Rose ; and those two shares of the estate were liable to contribute equally to make good the deficiency due to the corporation.   One half was nine hundred and fifty-four dollars and sixteen cents, but, by taking the whole amount (one thousand nine hundred and eight dollars and thirty-three cents) out of Mrs. Fay's share, it left so much more for Mr. S. to receive.   Upon no principle of equality or equity was Mr. S. entitled to this—so far as that balance due to the corporation was concerned, it was a case of joint suretyship between Mrs. Fay and John P. De Rose in which the rule of equal contribution would apply.

The lien of the corporation had priority and preference to the S.'s mortgage; and the most that he could ask was that Mrs. Fay's share should bear one-half of it.   And yet, Mr. S. was instrumental in getting up the petition for Mrs. Fay and procuring the order for the payment of the whole out of the fund in which she was interested.   He was, still,

acting as her solicitor and as such, he subscribed the petition and presented it and obtained the order.

Whatever may have been her seeming willingness, again to petition the court for the purpose and to accept the small amount that was paid to her, it is impossible, as between her and her solicitor, to regard her as any thing more than a passive instrument in his hands, which he had no right, thus, to use for his own benefit. As I have, before, had occasion to remark, he had no right, in my opinion, to propose or allow her to do an act so detrimental to her own interest, but was bound to advise and protect her against such an act of folly and weakness. The Lord Chancellor of Ireland observed, in the case of *Segrave* v. *Kirwan*, 1 Beatty's R. 157, that wherever a professional man is called on to give his services to a client, whether to prepare a deed or will, the law imputes to him a knowledge of all the legal consequences to result, and requires that he should distinctly and clearly point out to his client all those consequences from whence a benefit may arise to himself from the instrument so prepared, and if he fail to do so, a court of equity will deprive him of it.

If this be true of a deed or will, why may it not be true of a petition to be presented to the court by which a client is made to relinquish an important interest for the benefit of the solicitor, and where it is very much a matter of course for the court to make an order pursuant to its prayer? There is, to be sure, some testimony which shows that Mr. S. informed Mrs. Fay that her interest and his were now likely to come in collision and that he suggested to her that she had better employ another solicitor. But I think he should have gone further and absolutely refused to draw up and present such a petition for her as he did, or, if he acted any further for her in the matter, it should have been only to petition that one-half and not the whole of the deficiency should be taken out of her fund. And, in this point of view, it matters not that she had friends at hand or other lawyers with whom to consult and advise. So long as Mr. S. chose to act as her solicitor, he was bound to give her just such advice as he would, acting as a sensible and good lawyer,

have given her had he and his own interest been entirely out of the question.

Another objection exists, that the rights of the infants in and to this money, though somewhat contingent, have been entirely overlooked or disregarded in the order that was made authorizing the whole amount that was required to be taken out of that share of the estate. Counsel have now appeared in behalf of these infants and insist that it is not too late to rectify the error, by requiring the solicitor to refund, in order that the money may be placed in court for their ultimate benefit, subject, of course, to any claim which Mr. S. may have upon that portion which may vest in John P. De Rose's heirs after Mrs. Fay's death by virtue of his mortgage from John P. De Rose : if it shall appear that the mortgage covers that contingent undivided interest.

I see no escape from this conclusion. Mr. S. must be required to pay into court, within twenty days, out of the money which he has received of the John P. De Rose share of the estate, on account of his mortgage, the sum of nine hundred and fifty-four dollars and sixteen cents, with interest thereon from the twenty-third day of June, one thousand eight hundred and forty, being the time when he received or might have received it. He must, also, refund and pay into court all the money which he received for principal and interest, which was two hundred and seventy-one dollars and sixty-nine cents on his first judgment, excepting the twenty-two dollars and twenty-two cents, fifty dollars and fifteen dollars, amounting to eighty-seven dollars and twenty-two cents, as forming a part of the judgment with the interest thereon, which part and interest he has a right to keep ; and he must pay interest on the residue of the two hundred and seventy-one dollars and sixty-nine cents from the time he received it in May, one thousand eight hundred and forty. He must, likewise, refund and pay into court all the money he received on his second judgment, being two hundred and ninety-four dollars and forty-five cents for principal and interest, except fifteen dollars included in and forming a part of that judgment, which he is entitled to hold with interest thereon ; and he will have to pay interest on the residue received by him from the time he received it in May, one thousand eight

hundred and forty.   And I must adjudge Mr. S. to pay the
costs of this application and of the proceedings thereunder
to be taxed.