Allen vs. Frawley.

---

ALLEN, imp., Appellant, vs. FRAWLEY, imp., Respondent.

*April 9 — April 27, 1900.*

*Attorneys at law: Fraud: Conspiracy: Action, at law or in equity? Trusts and trustees: Survival of actions.*

1. Wilful misstatements of the law by attorney to client to secure an advantage to himself, with knowledge of the falsity and intent to defraud on the one side and ignorance and reliance on the other, constitute actionable fraud.

Allen vs. Frawley.

2. A complaint alleged a conspiracy between defendants and one other person to obtain by fraud from plaintiffs' testatrix and ancestor her note secured by mortgage on land, for the purpose of selling the same and dividing the proceeds between the conspirators; the obtaining and sale of the note and mortgage accordingly; the foreclosure of the mortgage by the purchaser; the purchase of the land by the defendants at the foreclosure sale, and their retention of the same and collection of the rents; and a deficiency judgment, paid by plaintiffs. The prayer was that defendants be compelled to convey the lands to plaintiffs, or that plaintiffs recover the value thereof, and also the amount of the judgment paid by them and the rents. *Held*, that the action was in equity to charge defendants as trustees and to enforce the trust, although a portion of the relief demanded was not obtainable in such an action; and that the cause of action survived the death of the *cestui que trust.*

3. For the amount paid on the deficiency judgment, or for the loss of the land through the foreclosure of the fraudulently acquired mortgage, the recovery would necessarily be in a tort action, but any right to that form of action died with the mortgagor.

4. The conspiracy as alleged was consummated when the note and mortgage were sold and the proceeds divided by the conspirators, and to recover such proceeds plaintiffs' testatrix had a clear and adequate remedy at law by an action *ex contractu* for money had and received.

5. The events subsequent to the sale of such note and mortgage were not within the scope of the conspiracy as alleged, nor was it shown that plaintiffs could not have prevented them by paying the mortgage or defending against its foreclosure. On the demurrer of a defendant whose only connection with the fraud, as alleged, was by said conspiracy, it is *held* that the complaint fails to connect such fraud with the acquisition of title to the land so as to charge defendants with a trust therein, and fails therefore to state any cause of action for equitable cognizance.

Appeal from an order of the circuit court for Eau Claire county: James O'Neill, Circuit Judge. *Affirmed.*

Appeal from order sustaining general demurrer of *Thomas F. Frawley* to the complaint, which sets forth the following material facts: Plaintiffs are the executors and all the heirs at law of one Mary Allen, deceased, who died May 6, 1894. In 1892 she, desiring certain steps with reference to her de-

ceased husband's estate, consulted *Thomas F. Frawley*, who instituted administration proceedings, and procured the appointment of the defendant R. K. Boyd. *Thomas F. Frawley* associated with himself in the attorneyship for Mary Allen his brother, William Frawley, and notified her thereof. Upon her inquiry why the business did not proceed, the two defendants and William Frawley having, as alleged, entered into a conspiracy "to fraudulently obtain from said Mary Allen a note secured by mortgage upon real estate, for the purpose of selling the same and dividing the proceeds among themselves," William Frawley, accompanied by Boyd, visited her and fraudulently represented to her that she must execute and deliver to him her note in the sum of $1,300, secured by mortgage on real estate, and, to overcome her reluctance, fraudulently represented to her that the laws of Wisconsin would not permit them to conduct or go on with the case unless they had their pay or were secured for it, and that in case they were not so secured or paid the court would ask them if they had their pay, and if they said not the court would dismiss the case, and further represented that a note and mortgage given for attorney's fees would not be negotiable, and they would not be able to transfer the same; and said William Frawley promised, as an inducement and consideration for the making of said note and mortgage, that he and his brother would proceed and take certain steps with reference to rights in property of the deceased husband, and promised to attach to the note and mortgage a writing declaring the services to be performed. Said fraudulent statements were made by said William Frawley in pursuance of said conspiracy, with knowledge of their falsity, and for the purpose of deceiving Mary Allen and inducing her to execute and deliver the note and mortgage, and without intention of doing anything therefor for her benefit. She, relying upon said statements and putting confidence in the Frawleys and

said Boyd, as administrator, made a note and mortgage for $1,300 to William Frawley, upon certain premises in Chippewa Falls, of the alleged value of $2,500. None of the services were performed. In May, 1893, before the maturity of the note and mortgage, for a valuable consideration, said William Frawley sold and indorsed the same without recourse to one P. J. Bolin, who in July, 1895, commenced foreclosure suit, to which these plaintiffs were made parties and appeared and interposed defense. Judgment of foreclosure and for a deficiency was entered in November, 1895, and in January, 1897, the premises were sold at foreclosure sale, and were bid off by the defendants Boyd and *Thomas F. Frawley* for the sum of $1,800, leaving a·deficiency of $177, for which judgment was entered, and which plaintiffs have since paid. At the time of the commencement of the suit said Boyd and *Frawley* still held the premises, having collected the rents thereof since the 5th day of February, 1897. The proceeds of the sale of the note and mortgage to Bolin were divided between the defendants *Thomas F. Frawley* and R. K. Boyd and said William Frawley.

The prayer is for judgment that said Boyd and *Thomas F. Frawley* be compelled to convey to the plaintiffs the premises, and, in case that could not be done, that plaintiffs have judgment for the value of the premises in the sum of $2,500; also, for the $177 paid upon the deficiency judgment; also, for the rents and use and occupation of said premises, and for general relief.

For the appellant the cause was submitted on the brief of *Vesper Morgan.* To the point that an attorney is to be regarded, in all his relations with his client, as acting in a fiduciary capacity, and that transactions between them by which the attorney is benefited will be set aside unless clearly shown by the attorney to have been either just and fair or purely voluntary on the part of the client, he cited *Hughes v. Willson,* 128 Ind. 491; *Petrie v. Williams,* 68 Hun,

589; *Alaniz v. Casenave*, 91 Cal. 41; *Cheney v. Gleason*, 125 Mass. 166; *Emery v. Parrott*, 107 Mass. 95; *Ormond v. Hutchinson*, 13 Ves. 47, 51; *Beaumont v. Boultbee*, 5 Ves. 485; 1 Story, Eq. Jur. §§ 218, 219; *Goodrich v. Smith*, 87 Mich. 1; *Taylor v. Barker*, 30 S. C. 238; *Smith v. Smith*, 45 N. Y. St. Rep. 591; *Cotrill v. Krum*, 100 Mo. 397; *Ford v. Harrington*, 16 N. Y. 285; *Whitehead v. Kennedy*, 69 N. Y. 462; *Schuttler v. Brandfass*, 41 W. Va. 201; *Butler v. Prentiss*, 158 N. Y. 49; *Brooks v. Martin*, 2 Wall. 70, 82; *Mason v. Ring*, 2 Abb. Pr. N. S. 322; *In re McDermit*, 63 N. J. Law, 476.

For the respondent there was a brief by *Frawley, Bundy & Wilcox,* and oral argument by *C. T. Bundy.*

Dodge, J.    Respondent seeks to support his demurrer on several grounds, some of which require but brief discussion:

1. He contends that this is an action *ex delicto* to recover damages for deceit, and therefore does not survive. *John V. Farwell Co. v. Wolf*, 96 Wis. 10; *Lane v. Frawley*, 102 Wis. 373. We cannot agree with this view. The complaint is entitled to a liberal construction. Sec. 2668, Stats. 1898. So construed, it fairly presents a purpose and attempt to charge the acquisition of property by fraud, and to obtain, not so much the damages thereby caused the plaintiffs' decedent, but a return to them of that which the defendant has fraudulently obtained and holds,—in other words, to charge defendant with the character of a trustee for her, and to enforce the trust. Such a suit in equity survived the death of the *cestui que trust* at common law. *Cheney v. Gleason*, 125 Mass. 166. Its survival is not dependent upon sec. 4253, Stats. 1898. True, certain relief prayed is not within the scope of such a suit,— as, for example, recovery of the $177 paid to Bolin on deficiency judgment, which is strictly damage to the deceased, and recoverable only in an action in tort; but excessive demand for relief is not ground for demurrer (*Hawley v. Tesch,* 72 Wis. 299), and it is not suf-

ficient here to overcome the rest of the pleading and destroy the general purpose above stated.

2. It is claimed that no legal or actionable fraud is set forth, in that the inducements alleged for the making of the mortgage are either promises to perform future acts or misstatements of law. We need not, for the purposes of the question before us, discuss whether fraud may ever be predicated upon a promise of future performance; for this complaint alleges wilful misstatement of the law by attorney to client to secure an advantage to himself, with knowledge of the falsity and intent to defraud on the one side, and ignorance and reliance on the other. This allegation is a most serious one to be made against any attorney, but we must remember that as yet it is only an unproved assertion, taken for true only in a technical sense, for the purpose of applying rules of law on that assumption. Whatever may be the rule as to intentional misstatements of the law as between persons upon parity with each other, we cannot for a moment assent to the proposition that courts of equity or law are not to protect the trusting client against such acts on the part of her attorney. In the whole realm of business transactions hardly any act presents more of moral turpitude nor more likelihood of effective fraud than the intentional and self-profiting misinformation as to the law from a trusted attorney to his client, relying on him, as she must, for guidance and protection. It is gratifying to find few, if any, cases where the direct question has been passed on by courts. That fact speaks eloquently the response which lawyers, English and American, have given to the high responsibilities thrust upon them by the opportunities and temptations of their confidential and influential relations with their clients. Courts have hardly had to deal with anything more aggravated than omission to advise clients against the attorney's own interest, or honestly mistaken statements of the law; but there has been, as a rule, no

hesitation in declaring even these sufficient to defeat transactions from which the attorney benefits at the expense of his client.

Thus, Story (1 Eq. Jur. § 219) says: "If an attorney employed by the party should designedly conceal from his client a material fact or principle of law by which he should gain an interest not intended by the client, it will be held a positive fraud, and he will be treated as a mere trustee for the benefit of his client and his representatives. And in a case of this sort it will not be permitted to the attorney to set up his ignorance of law or his negligence as a defense or an excuse.    It has been justly remarked that it would be too dangerous to the interests of mankind to allow those who are bound to advise, and who ought to be able to give good and sound advice, to take advantage of their own professional ignorance to the prejudice of others. Attorneys must, from the nature of the relation, be held bound to give all the information which they ought to give, and not be permitted to plead ignorance of that which they ought to know." *Gibbons v. Hoag,* 95 Ill. 45, 70; *Cleine v. Englebrecht,* 41 N. J. Eq. 498, 502; *Bulkley v. Wilford,* 2 Clark & F. 102, 177; *Miles v. Ervin,* 1 McCord, Eq. 524; *Ryan v. Ashton,* 42 Iowa, 365; *De Rose v. Fay,* 4 Edw. Ch. 40, 44; *Rogers v. R. E. Lee M. Co.* 9 Fed. Rep. 721; *Baker v. Humphrey,* 101 U. S. 494, 502; Pomeroy, Eq. Jur. 960.

This court is not disposed to relax or confuse the niceties of a code of ethics which for so many centuries has, with few exceptions, protected and justified the intrusting of vast property rights and most sacred interests to the care of lawyers, without thought or precaution as to their pecuniary responsibility.    And we hold that the allegations of misrepresentation and misstatement of rules of law, if proved as set forth, would constitute actionable fraud.

3. Our greatest difficulty with this complaint arises upon the question whether it alleges that a situation such as war-

rants generally the relief demanded, or any equitable relief, has resulted from the fraud alleged. Apparently the pleader did not clearly conceive the distinction between those damages to the plaintiffs or their decedent which might justify and form a part of the recovery in a tort action, and the acquisition of specific property by the defendants upon which a constructive trust may be imposed. Among the former might perhaps fall the loss of the mortgaged property through the enforcement of a fraudulently acquired mortgage, if the facts making such loss probable were known to the defendants taking such mortgage; but, as has already been said, any right to that form of action died with Mrs. Allen. In this case the only connection of the respondent, *T. F. Frawley*, with the alleged fraud is by conspiracy. The specific acts were all committed, as asserted, by another. The scope and extent of that conspiracy is defined by the complaint to have been to " fraudulently obtain from said Mary Allen a note secured by a mortgage on real estate, for the purpose of selling the same and dividing the proceeds among themselves." The mortgage was so sold and the proceeds received divided by the alleged conspirators, and thereby the whole purpose of the fraud and of the conspiracy set forth was accomplished. The proceeds of that conspiracy acquired by the defendants were their respective shares of the money for which the mortgage was sold. To reach these Mrs. Allen required no aid from a court of equity. Her remedy in an action at law *ex contractu* for money had and received was clear and adequate to secure to her all that equity could give, namely, payment of such money.

The subsequent events, namely, the failure of Mary Allen and of the plaintiffs to pay said mortgage, the foreclosure thereof, the offering of the mortgaged property at public sale, and the purchase and acquisition thereof for a new and approximately adequate consideration paid by defendants, are not by the complaint suggested to have been within the

scope of the conspiracy or the contemplation of the conspirators. Neither is it alleged that the plaintiffs might not readily have prevented them, either by paying the mortgage or by setting up its fraudulent character as a defense in the foreclosure action, where, if proved, it would have been effective, ·unless Bolin purchased without notice,— a fact not alleged. The fact that the defendants purchased at the foreclosure sale is not significant. The loss to the plaintiffs is not thereby enhanced, nor is the benefit derived by defendants from the mortgage thereby increased. If profit is made on the land, it results from an advantageous purchase in the open market, and at public sale, at which all others, including plaintiffs, had equal opportunity. True, all these conditions might also exist had there been a corrupt conspiracy to acquire the real estate of the decedent, involving direct misrepresentation, not only in inducing the execution of the mortgage, but involving also the purpose and intent to pass that mortgage to an innocent holder, and through a foreclosure sale to effect transfer of the premises; and in such case there might, perhaps, be recovery of the property. But in absence of allegations we cannot assume such a conspiracy. Fraud must be clearly and specifically pleaded, both as to the acts accomplishing the deceit and as to the injury caused thereby,— the fraudulent result. Story, Eq. Pl. §§ 251, 252. We are constrained to hold that the complaint fails to connect the alleged deceit practiced on Mary Allen with the acquisition of title to the real estate by defendants, so as to charge them with a trust therein, and, by reason of such failure, is not sufficient to state any cause of action for equitable cognizance.

*By the Court.*— Order sustaining demurrer is affirmed.