Hubbard, Respondent, vs. McLean, Appellant.

*May 15—June 19, 1902.*

*False representations by attorney as to legal effect of transaction: Liability.*

Defendant, an attorney at law who was acting as the adviser of plaintiff's father, after having caused the legal title to the father's land to be conveyed to plaintiff, induced the latter, by falsely representing that he would thereby incur no personal liability, to execute promissory notes and a mortgage of the land to secure the father's indebtedness. Plaintiff was ignorant of the facts and the law applicable, and had no interest in the transaction except to carry out what he supposed to be the wish of his father as expressed by defendant, upon whose statements he relied. *Held,* that defendant was liable for the loss sustained by plaintiff by reason of the enforcement of his personal liability on the notes.

Appeal from an order of the circuit court for Dunn county: E. W. Helms, Circuit Judge. *Affirmed.*

This action was commenced January 31, 1901, to recover $1,000 damages for moneys obtained from the plaintiff by fraud and false representations. This is an appeal from an order overruling a demurrer to the complaint.

The complaint alleges, in effect, that July 9, 1880, Hamilton Hubbard, the father of the plaintiff, owned 800 acres of land and some village lots, therein described, in Dunn county; that one A. L. Smith owned a mortgage thereon, securing an indebtedness to him against the plaintiff's father, and also held a tax deed on a part of such real estate; that in all the transactions therein mentioned the defendant was the agent and acted for Smith, and also advised and counseled the plaintiff's father as his attorney; that by the advice and direction of the defendant, the father, on the day and year named, conveyed such real estate to one Hatch, to hold for his benefit, and to reconvey to him when demanded; that at the same time Smith released his interest in the premises under the tax deed, and Hatch executed two mortgages to Smith—one for $1,000, covering the property described and certain property of Hatch in Richland county, and another for $1,200, covering the property described; that the defendant caused both of such mortgages to be foreclosed, and at the foreclosure sale, and without the knowledge or consent of the plaintiff, the defendant caused such real estate to be struck off in the name of the plaintiff for $3,070.16, and caused a deed thereof to be executed to the plaintiff, and recorded September 22, 1882; that at that time there were certain judgments against the father aggregating a large amount, duly docketed in Dunn county and unsatisfied of record, and, if unpaid or unsatisfied, then the same were valid and existing liens against such real estate; that the existence of such judgments, and whether the same, or any part thereof, were then unsatisfied, were facts well known to the defendant, and of which the plaintiff had no knowledge or information.

The complaint then alleges that during all the times mentioned the plaintiff was a farmer, wholly inexperienced in law, and ignorant of the existence of such judgments and the fact of their being a lien on such real estate; that in all the

acts of the plaintiff therein mentioned he relied solely upon
the defendant, and acted upon his advice, all of which facts
were well known to the defendant; that September 30, 1882,
the defendant requested the plaintiff to execute and deliver to
Smith five notes and a mortgage on such real estate, to secure
his father's indebtedness to Smith; that for the purpose of
deceiving and defrauding the plaintiff and inducing him to
so execute such five notes and mortgage, the defendant falsely
and fraudulently represented to the plaintiff that by so doing
he would assume no personal responsibility, that no demand
could or would be made upon him for the payment of such
indebtedness, but that only the property covered by the mort-
gage would be liable for the payment of such indebtedness;
that for the same fraudulent purpose the defendant failed
and neglected to disclose to the plaintiff the fact of the exist-
ence of such judgments, and that they were apparently liens
against the property, but fraudulently and wrongfully con-
cealed such facts from the plaintiff, and led him to think
and believe that the mortgage so executed by him would be
a first lien on such real estate; that the defendant then and
there well knew that the representations so made by him to
the plaintiff were false; that because of such false and fraud-
ulent representations and concealment, and relying thereon,
and believing them to be true, the plaintiff executed such
notes and mortgage to Smith; that the plaintiff was in no
manner interested in the real estate, or interested in or liable
for the indebtedness which such notes and mortgage were
given to secure, and in executing the same he acted at the
instance and request of the defendant; that some time after
the execution of the five notes and mortgage to Smith, the
plaintiff's father, through the plaintiff as his agent, delivered
to the defendant $900 to be applied on such indebtedness,
and the defendant, for the purpose of defrauding the plaint-
iff, wrongfully and fraudulently failed and neglected to so

apply such money or any part thereof, but wrongfully and · fraudulently converted the same to his own use.

The complaint then alleges that September 21, 1883, the defendant requested the plaintiff, for the purpose of taking up the notes and mortgage so executed by the plaintiff to Smith, to execute in lieu thereof his note and mortgage to one Parker for an amount equal to the amount remaining due on the notes to Smith; that for the purpose of deceiving and defrauding the plaintiff, and inducing him to sign such note and mortgage to Parker, the defendant again fraudulently and wrongfully represented to the plaintiff that by signing such note and mortgage he would assume no personal responsibility, and again assured and promised the plaintiff that no demand could or would be made on him for the payment of such note, and again failed and neglected to inform the plaintiff of the existence of such judgments, and led the plaintiff to believe that such mortgage to Parker would be a first lien on the premises; that because of such false and fraudulent representations, and relying upon the same, and believing them to be true, and because of such former false and fraudulent representations and concealments, and still relying thereon, and still believing them to be true, the plaintiff did, September 21, 1883, execute a note for $1,000 and a mortgage to Parker, believing that he was in no manner liable thereon, and so believing, and because of such representations, he did not use great diligence in ascertaining what papers he was executing; that he understood he was executing a note and mortgage for $1,000; that he had no knowledge of executing any other note or mortgage at that time, but that it appears from the records that he executed two mortgages at that time,—one to Parker to secure two notes of $1,000 each, and one to William C. McLean to secure a note of $500; that whatever notes or mortgages he signed at that time were so signed at the request of the defendant, and because of the false and fraudulent representa-

tions mentioned; that the defendant was the agent of Parker, and represented him in all the transactions mentioned.

It is then alleged that thereafter the defendant caused the mortgage to Parker to be foreclosed by advertisement, and the said lands were sold under such foreclosure September 15, 1888, to the defendant, for $1,178.49; that said lands were worth at the time of such sale not less than $4,000, and but for the fraudulent acts of the defendant thereinafter mentioned said lands would have sold for at least sufficient to satisfy the mortgage; that such judgments appeared to be still unsatisfied and existing liens against the property prior to the Parker mortgage, but had been in fact paid by the defendant with the money of the plaintiff's father, and while the defendant was his attorney, and should have been satisfied of record by the defendant, but the defendant had fraudulently and wrongfully taken assignments of such judgments to himself, and allowed the same to remain unsatisfied of record, and apparent liens against the land prior to such mortgage, for the purpose of preventing persons from bidding on the sale and the property selling for what it was worth, and thereby defrauding the plaintiff; that to carry out such purpose the defendant caused the 800 acres on such sale to be offered in one entire piece, and not otherwise, whereas they should have been sold in farms of not exceeding 160 acres each; that the defendant caused such lands to be so sold when there was no person present to bid on the sale but himself.

The complaint further alleges that after the foreclosure sale, and after the $900 had been delivered to the defendant as mentioned, and for the purpose of defrauding the plaintiff, the defendant wrongfully and fraudulently caused one of the notes so executed by him to Parker to be transferred and assigned to the Wisconsin Loan & Trust Company, a corporation doing business at Superior, in which the defendant is, and at all the times mentioned was, a stockholder and officer, having control of its affairs; that September 12, 1894, for

the purpose of defrauding the plaintiff, the defendant fraudulently and wrongfully caused an action to be brought against the plaintiff on the note so held by that corporation; that October 5, 1894, judgment was obtained thereon against the plaintiff in favor of the corporation by default for $1,631.50; that July 26, 1900, the defendant, with knowledge that such judgment had been fraudulently procured, and that there was nothing due on that note upon which such judgment was so procured, fraudulently and wrongfully caused an execution to be issued on that judgment, and caused the personal property of the plaintiff to be levied on and seized by virtue of such execution, and the plaintiff was thereby compelled to and did, in order to save his property so levied upon, pay to the sheriff upon that execution $1,000; that ever since the plaintiff signed such notes the defendant has fraudulently and wrongfully caused the plaintiff to continue relying upon said false representations that he assumed no personal liability by signing said notes and mortgages, and to believe the same to be true; that for the purpose of defrauding the plaintiff, and preventing him from learning of the fraud, and from protecting himself from such fraud either at the time of such foreclosure or at the time of the commencement of such action against him or at any other time, the defendant has fraudulently and wrongfully failed and neglected to notify the plaintiff that any claim was made against him for the payment of such indebtedness, and caused the plaintiff to be wholly ignorant of such fact; that because of such fraudulent concealment the plaintiff had no notice or knowledge that any claim was made against him for the payment of such indebtedness, or of the fraud perpetrated against him by the defendant, until the levy of said execution; that because of the false representations of the defendant and the reliance of the plaintiff thereon, and the belief that the same were true, the plaintiff did not appear at the foreclosure sale or take any interest therein, and that because thereof, and re-

lying thereon, the plaintiff believed that the summons served upon him in the action against him was an action affecting the title to the real estate, and in no manner affecting him, and for that reason did not appear in that action, and for the same reason did not take steps to open up the judgment in said action, and did not take any steps to protect himself against the fraud of the defendant. The complaint alleges, finally, that all of such fraudulent acts, false representations, wrongful sale, failure to apply the $900 upon the indebtedness of the plaintiff's father, the wrongful sale of the note, the bringing of the action thereon, the issuing of the execution, the levy thereunder, and the fraudulent concealment from the plaintiff that any personal claim was made against him, were a part of one fraudulent plan or scheme of the defendant, whereby the plaintiff has been damaged in the sum of $1,000.

*Francis H. De Groat,* for the appellant.

For the respondent the cause was submitted on the brief of *E. B. & R. E. Bundy.*

CASSODAY, C. J.   The facts stated are all admitted by the demurrer.   It appears that the plaintiff's father was financially embarrassed.   He had a large amount of land, upon which Smith held a mortgage and tax deed, and there were several judgments against him.   Under such circumstances the father went to the defendant, an attorney at law in the county, and who was at the time agent for the mortgagee, for advice and counsel.   In pursuance of the defendant's advice and counsel, the father transferred his property to Hatch, who was to hold and convey the same, when requested, for the father's benefit.   Accordingly Hatch gave two mortgages on the land to Smith, aggregating $2,200.   The defendant caused both of such mortgages to be foreclosed, and on the foreclosure sale caused the lands to be struck off in the name of the plaintiff; all of which was without the knowledge or

consent of the plaintiff.  That took place September 22, 1882.
The plaintiff had no interest in the land nor any of such in-
debtedness, and whatever he did and whatever papers he
signed were at the request and by the direction of the de-
fendant, as such attorney, and for the benefit of his father.
The indebtedness was really that of the father.   The plaintiff
was forced to take the legal title by the unauthorized conduct
of the defendant, and without the plaintiff's knowledge or con-
sent.   As the holder of such mere nominal title, the plaintiff,
at the request and by the direction of the defendant, as such
attorney, executed the five Smith notes and mortgage, and
subsequently the two Parker notes and mortgage, and the
note and mortgage to William C. McLean, upon the defend-
ant's false representations at the time of each of such trans-
actions that the plaintiff would thereby incur no personal
liability, and upon which the plaintiff relied; and by reason
of the plaintiff's ignorance of all the facts and the defendant's
fraud, concealment, and false representations the plaintiff
did not know that by signing such notes he had incurred any
personal liability until he was compelled to pay the $1,000
July 26, 1900.   It appears from the complaint that the de-
fendant acted as the attorney, adviser, and counselor of the
plaintiff's father throughout the several transactions; and
that after the defendant had got the title to the land in the
name of the plaintiff, without his knowledge or consent, the
defendant assumed full control, and the plaintiff acquiesced,
and signed whatever papers he was requested and directed to
sign by the defendant.

It is true, as contended by defendant's counsel, that a false
representation, to be actionable, must relate to a past or
present state of facts, and not to the mere nonperformance of
a promise looking to the future.   *Patterson v. Wright,* 64
Wis. 289, 25 N. W. 10; *Sheldon v. Davidson,* 85 Wis. 138,
55 N. W. 161; *Louis F. Fromer & Co. v. Stanley,* 95 Wis.
64, 69 N. W. 820; *Field v. Siegel,* 99 Wis. 609, 75 N. W.

397; *Horton v. Lee,* 106 Wis. 444, 82 N. W. 360; *Milwaukee B. & C. Co. v. Schoknecht,* 108 Wis. 457, 465, 84 N. W. 838. But the misrepresentation here relied upon is not the mere failure to perform a promise. On the contrary, the representation here alleged related to the legal effect of a then present transaction, made by the request and direction of a learned lawyer knowing all the facts, acting as the adviser and counselor of the plaintiff's father, addressed to the plaintiff, who was ignorant of the facts and the law applicable, and who had no interest in the transaction except to carry out what he supposed to be the wish of his father as expressed by the defendant, upon whose statements he relied. True, this court has held in a case cited by counsel for the defendant that:

"A false or mistaken representation of what the law is upon an admitted state of facts is no basis of an action, especially where there are no confidential relations between the parties." *Gormely v. Gymnastic Asso.* 55 Wis. 350, 13 N. W. 242.

That proposition is, well sustained by authority. 14 Am. & Eng. Ency. of Law (2d ed.) 54. But it is there said that:

"If a promise to do something in the future is accompanied by false statements as to existing facts, or an intentional concealment of facts which the promisor is under a duty to disclose, the rule that a mere promise does not constitute fraud does not apply. In such a case the fraud consists, not in the promise, but in the false representation or concealment. It is immaterial in such cases that the promise, as well as the representation of fact, was relied upon; for a false representation, to amount to fraud, need not be the sole inducement for action."

The same authority states that:

"It has repeatedly been held that the general rule as to representations of law does not apply where a relation of trust or confidence exists between the parties, nor if the person making the representation knows that the other is ignorant

of the law, and takes advantage of his ignorance to mislead him by a false statement of the law. In such cases the representation may constitute fraud in equity, and even at law." *Id.* p. 57.

Among the numerous cases cited in support of the proposition is a case from Alabama, in which it is said, and in effect held, by the court, that:

"If any peculiar relationship of trust or confidence existed between the parties, and the plaintiff has availed himself of such trust or confidence to mislead the defendant, by a misrepresentation as to the legal effect of the contract, it would constitute a fraud. So, if the defendant was in fact ignorant of the law, and the other party, knowing him to be so, and knowing the law, took advantage of such ignorance to mislead him by a false statement of the law, it would constitute a fraud." *Townsend v. Cowles,* 31 Ala. 428, 436.

Also a Michigan case, in which it is said by the court that:

"There is also an abundance of authority that fraudulent representations as to the legal operation and effect of an instrument will be sufficient to avoid the same when made to a party who is able to read, or who has actually read the instrument, but who is unable to judge of its true character and construction. To have this effect, the fraud must be contemporaneous with its execution, and must consist in obtaining the assent of the party defrauded by inducing a false impression as to its legal or literal nature and operation." *Berry v. Whitney,* 40 Mich. 65, 72.

The facts alleged in the case at bar bring it within the principle of the authorities cited. It is quite analogous to numerous cases in this court where there has been a mistake of law occasioned by fraud, imposition, or misrepresentation. *Kyle v. Fehley,* 81 Wis. 71, 72, 51 N. W. 257, and cases there cited; *Whitmore v. Hay,* 85 Wis. 251, 55 N. W. 708; *Kropp v. Kropp,* 97 Wis. 142, 72 N. W. 381; *Lardner v. Williams,* 98 Wis. 521, 74 N. W. 346; *Wisconsin M. & F. Ins. Co. Bank v. Mann,* 100 Wis. 596, 618–620, 76 N. W. 777; *Allen v. Frawley,* 106 Wis. 638, 82 N. W. 593. But it is unnecessary to pursue the discussion further. As the

alleged cause of action did not arise until July 26, 1900, the question of the statute of limitations is not involved in the case.

*By the Court.*—The order of the circuit court is affirmed.